# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 19, 2007    Decided July 24, 2007

No. 05-7152 & 05-7161

CARL HUNDLEY,
AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN
E. HUNDLEY, APPELLEE/CROSS-APPELLANT, AND
LYNNE T. HUNDLEY,
APPELLEE

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLANTS/CROSS-APPELLEES

Appeals from the United States District Court
for the District of Columbia
(No. 02cv00638)

*Holly M. Johnson*, Section Chief, Office of Attorney General for the District of Columbia, argued the cause for appellants/cross-appellees. With her on the briefs were *Robert J. Spagnoletti*, Attorney General, *Todd S. Kim*, Solicitor General, and *Edward E. Schwab*, Deputy Solicitor General.

*Gregory L. Lattimer* argued the cause for appellees/cross-appellant. With him on the briefs were *Janell M. Byrd* and *Donald M. Temple*.

Before: GINSBURG, *Chief Judge*, and RANDOLPH and KAVANAUGH, *Circuit Judges*.

KAVANAUGH, *Circuit Judge*:  In the middle of a night in March 2002, Brian Hundley and a woman were in a car parked outside an apartment complex in Washington, D.C.  Off-duty Metropolitan Police Department Officer Marcus Gaines tapped on the window of the car as he walked past.  Hundley, who was in the driver's seat, began to drive the car in the direction of Officer Gaines.  Officer Gaines pulled his gun, yelled "police," and ordered Hundley to stop and get out of the car.  Hundley complied and exited the car.  According to Officer Gaines, while Hundley was standing outside the car, Hundley suddenly moved his right hand from behind his back and began lunging toward Officer Gaines, who was about 10 to 15 feet away.  In apparent self-defense, Officer Gaines shot and killed Hundley.

Hundley's estate sued Officer Gaines, former police official Terrance Gainer, and the District of Columbia and, as relevant here, brought three claims: (i) a D.C. tort law claim of assault and battery based on the fatal shot; (ii) a corresponding federal § 1983 claim of excessive force in violation of the Fourth Amendment, also based on the fatal shot; and (iii) a D.C. tort law claim of negligence based on the initial stop.  The jury found for defendants on the assault and battery and excessive force claims, concluding that Officer Gaines was justified in shooting Hundley in self-defense.  At the same time, however, the jury in a written interrogatory answer specifically rejected Officer Gaines's version of events regarding the self-defense shooting.  The jury found for plaintiffs on the negligence claim, concluding the initial stop was unreasonable; the jury also determined that the negligent stop proximately caused Hundley's death.  The jury awarded damages of $242,400 to plaintiffs.

On appeal, Hundley's estate challenges the assault and battery and excessive force verdict for the defense, arguing that the jury's verdict for defendants on those two claims was inconsistent with the jury's written interrogatory answer, in which it directly rejected Officer Gaines's version of events. And defendants challenge the negligence verdict, arguing that the negligent stop did not proximately cause the shooting death that formed the basis for the damages award.

We agree with Hundley's estate that the jury verdict on the assault and battery and excessive force claims was inconsistent with the jury's answer to the written interrogatory. We agree with defendants that the negligent stop, as a matter of law, did not proximately cause the shooting death and thus cannot justify the damages for the shooting death. We therefore reverse the judgment of the District Court and remand for a new trial for Hundley's estate on the assault and battery and excessive force claims.

I

At approximately 1:30 a.m. on March 23, 2002, off-duty Metropolitan Police Department Officer Marcus Gaines was riding in a car driven by his brother Ronald when they arrived in the parking lot of Marcus Gaines's apartment building near 6th and N Streets, N.W., in Washington, D.C.

According to Officer Gaines, the following events then transpired. As Officer Gaines and his brother drove around the lot looking for a place to park, Officer Gaines observed a man and a woman engaging in sexual activity in a parked car. The man was Brian Hundley (Hundley was previously unknown to Officer Gaines); the woman was known by Officer Gaines to be a prostitute. Ronald Gaines parked his car, and Officer Gaines got out and walked ahead toward the apartment building. As

Officer Gaines walked behind Hundley's car, Hundley began to back out of his parking space – nearly hitting Officer Gaines. Officer Gaines believed that Hundley, the driver of the car, simply had not seen him. Officer Gaines tapped on the passenger-side window of the car to alert Hundley and his passenger to Officer Gaines's presence.

Officer Gaines then continued walking toward his building. Just after Hundley finished backing his car out of its parking space, Officer Gaines passed in front of the car on his way to the building. At that point, Hundley suddenly drove his car at a rapid speed toward Officer Gaines. Officer Gaines jumped out of the car's path and drew his gun. He yelled "police" and ordered Hundley to stop and get out of the car; Officer Gaines based his decision to order Hundley out of the car on what he described as Hundley's attempted assault with a deadly weapon (namely, assault with the car).

As soon as Officer Gaines ordered Hundley to stop and exit the car, Hundley complied and stood outside of the car with his hands in plain view. But then, according to Officer Gaines, Hundley stopped complying with the officer's orders. When Officer Gaines first ordered Hundley to place his hands on his car, Hundley instead put his hands in his pockets. Next, Officer Gaines ordered Hundley to take his hands out of his pockets, which Hundley did. But when Officer Gaines again ordered Hundley to place his hands on the car, Hundley failed to comply and acted as though he planned to re-enter his car. Officer Gaines then two more times ordered Hundley to place his hands on the car. The first time, Hundley instead put his hands behind his back. The second time, Hundley, with his right arm behind his back, suddenly moved his right hand as he lunged toward Officer Gaines.

Officer Gaines then fired a single shot at Hundley, which was fatal. Officer Gaines testified that he fired out of self-defense based on Hundley's lunge and sudden hand movement.

Two other witnesses saw at least some of the interaction between Hundley and Officer Gaines and provided additional accounts of that night's events. Ronald Gaines did not testify at trial, but his pre-trial statements about the incident were read to the jury. Ronald stated that he observed none of the altercation between Hundley and Officer Gaines until he saw Officer Gaines yelling at Hundley to exit Hundley's car. According to Ronald, Officer Gaines yelled several times for Hundley to show the officer his hands. Instead of following those orders, Hundley reached inside his jacket, at which point Officer Gaines shot him.

The prior testimony of a nearby resident, Linda Davis, was also admitted at trial. According to Davis, Officer Gaines seemed angry at Hundley and yelled three times for Hundley to exit his car. As Hundley complied and stood outside the car with his hands in the air, Officer Gaines shot him.

Hundley's estate filed a lawsuit against Officer Gaines, former Executive Assistant Chief of the Metropolitan Police Department Terrance Gainer, and the District of Columbia. The claims against defendants included assault and battery, a § 1983 claim of excessive force in violation of the Fourth Amendment, and negligence. The first trial resulted in a hung jury.

At the second trial, the jury rejected plaintiffs' assault and battery and excessive force claims with respect to the shooting. But the jury found in a written interrogatory that Hundley was not "shot after placing his right hand behind his back and then making a lunging motion toward Officer Marcus Gaines" – in other words, the jury directly rejected Officer Gaines's

testimony explaining that he had shot Hundley in self-defense. *See* Verdict Form at 1, *Hundley v. District of Columbia*, No. 02cv638 (D.D.C. Dec. 6, 2004). The jury also found that Officer Gaines had acted negligently in making the initial stop of Hundley and that the negligent stop proximately caused Hundley's death. The jury awarded a total of $242,400 in compensatory damages for Hundley's death.

In this Court, Hundley's estate challenges the assault and battery and excessive force verdict, arguing that the jury's verdict was inconsistent with the written interrogatory answer.[1] Defendants challenge the judgment for plaintiffs on the negligence claim.

II

We turn first to the jury's verdict for defendants on the assault and battery and excessive force claims. An officer's unreasonable use of force violates the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 388, 395-98 (1989). The victim therefore may sue the offending officer for damages under 42 U.S.C. § 1983. Such an unreasonable use of force also is an assault and battery under D.C. law. *See District of Columbia v. Jackson*, 810 A.2d 388, 392 (D.C. 2002).

Here, Officer Gaines testified that his use of force was reasonable because Hundley, with his right hand behind his back, suddenly lunged toward Officer Gaines – in other words, Officer Gaines shot Hundley in self-defense. The plaintiffs argued, with support from an eyewitness, that Officer Gaines was lying and that Officer Gaines in fact shot Hundley without justification.

---

[1] Another plaintiff, Lynne Hundley in her individual capacity, did not timely appeal the assault and battery and excessive force verdict.

In addition to asking the jury to render a verdict on the assault and battery and excessive force claims, the judge also instructed the jury to answer a written interrogatory: "Do you find that Brian Hundley was shot after placing his right hand behind his back and then making a lunging motion toward Officer Marcus Gaines?" Verdict Form at 1, *Hundley v. District of Columbia*, No. 02cv638 (D.D.C. Dec. 6, 2004). The written interrogatory tracked Officer Gaines's testimony regarding the apparent self-defense shooting. The jury answered "No." *Id.* The jury thus rejected Officer Gaines's testimony regarding the events that would have justified the use of force in self-defense. At the same time, however, the jury found that defendants were not liable for assault and battery or excessive force, even though defendants' argument against such liability was self-defense based on Officer Gaines's testimony.

On appeal, Hundley's estate argues that the jury's written interrogatory response is inconsistent with the jury's findings for defendants on the assault and battery and excessive force claims. *See* Fed. R. Civ. P. 49(b). Claims that a jury verdict is internally inconsistent "impose a special obligation on the court to view the evidence in a manner that reconciles the verdicts if possible, and to grant a new trial if not." *Smith v. District of Columbia*, 413 F.3d 86, 97 (D.C. Cir. 2005); *see Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963) (courts have duty to harmonize jury's answers "if it is possible under a fair reading of them: Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.") (internal quotation omitted); *see also* 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 49.20[6][b][i] (3d ed. 1997); 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2513 (3d ed. 1999).

Although successful claims of verdict inconsistency are rare, rare does not mean never. And this case is a classic example of an inconsistent verdict that cannot reasonably be reconciled or sustained. Two distinct versions of events were presented to the jury. The jury could conclude either that Officer Gaines shot Hundley in self-defense as described by Officer Gaines, or that he shot Hundley without justification. In making their cases to the jury, both sides agreed that liability turned on which version of events the jury believed. *See, e.g.*, Trial Tr. at 86-87, *Hundley v. District of Columbia*, No. 02cv638 (D.D.C. Nov. 29, 2004) (defense counsel arguing to court and referring to Linda Davis's testimony and to Officer Gaines's testimony: "[T]hese are the only two scenarios that were presented to the jury."). Yet the jury found for defendants on the assault and battery and excessive force claims while simultaneously answering a written interrogatory indicating that the jury did not believe Officer Gaines's version of events. The two answers cannot coexist; they make no sense in the context of the evidence presented in this case.

Defendants gamely try to justify the verdict by arguing that the jury could have concluded that Officer Gaines's use of force was reasonable while concluding that Officer Gaines's explanation for why he shot Hundley was inaccurate. Defendants argue, for example, that the jury could have found that Hundley lunged toward Gaines but did not place his hand behind his back. Or perhaps the jury found that Hundley's hand was behind his back, but he did not lunge. Or perhaps Hundley reached inside his jacket. Those hypothetical reconstructions are utterly unpersuasive in light of the record in this case and the way the case was tried to the jury. If the defendants thought the evidence supported alternative self-defense scenarios other than the one described by Officer Gaines and presented in the written interrogatory, they should have timely made that point in the

district court, especially with respect to the written interrogatory presented to the jury. *Cf.* Fed. R. Civ. P. 49(b), 51(c).

The bottom line is that the written interrogatory called for the jury to decide whether Officer Gaines's account was true. And the jury rejected his account. Officer Gaines's testimony was the basis on which defendants argued they were not liable for assault and battery and excessive force. The jury nonetheless found defendants not liable for assault and battery and excessive force. There is no coherent or reasonable way to reconcile the jury's two conclusions.

In an attempt to sustain the unsustainable, defendants resort to the argument that Hundley's estate waived its objection to the irreconcilable verdict. This argument takes some chutzpah given that plaintiffs repeatedly objected at trial to the proposed written interrogatory. *See Denny v. Ford Motor Co.*, 42 F.3d 106, 111 (2d Cir. 1994) (no Rule 49 waiver when defendant objects to relevant jury instructions before jury deliberations); *see also* Fed. R. Civ. P. 51(c). Indeed, even defense counsel during the trial acknowledged and foreshadowed the potential for inconsistency if the jury answered no to the written interrogatory and no to assault and battery and excessive force – in other words, found defendants not liable on assault and battery and excessive force but rejected Officer Gaines's version of events. The scenario identified at trial by both plaintiffs' counsel and defense counsel as a potential (if unlikely to occur) problem is exactly what subsequently happened in the jury's verdict.

After the jury delivered its verdict, the District Court dismissed the jury almost immediately. Consistent with ordinary practice, the District Court did not ask the parties whether they further "objected" in some way to that verdict. In

their post-trial motion, plaintiffs raised the argument that the verdict was inconsistent.

Defendants have cited no case supporting waiver when: (i) a party objected to a written interrogatory; (ii) the district court dismissed the jury after receiving the verdict without asking the parties whether they had any objections to the verdict; and (iii) the party raised an inconsistent verdict argument – based on the previously objected-to written interrogatory – in its post-trial motion for a judgment as a matter of law or new trial.[2] Under these narrow circumstances, we agree with Hundley's estate that a party has not waived its objection to an inconsistent verdict caused in part by a written interrogatory. *See* Fed. R. Civ. P. 49(b), 51(c).[3]

---

[2] This Court has not resolved whether we can consider an inconsistent verdict claim, other than for plain error, when a party failed to object in any way before the district court's entry of judgment. *Cf. Smith*, 413 F.3d at 97. In light of the repeated objection to the written interrogatory in this case, which was the source in part of the inconsistent verdict, we again need not reach that question.

[3] Because of our holding, we need not decide whether the inconsistency in the verdict constituted plain error. *Cf. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005) (failure to object prior to jury dismissal is waiver "absent a showing of fundamental error," which occurs when error is "so serious and flagrant that it goes to the very integrity of the trial or deprive[s] the jury of adequate legal guidance to reach a rational decision") (internal quotations omitted) (alteration in original); *Johnson v. ABLT Trucking Co., Inc.*, 412 F.3d 1138, 1141 (10th Cir. 2005) (failure to object to verdict inconsistency prior to discharge of jury is waiver "unless the verdict is inconsistent on its face such that the entry of judgment upon the verdict is plain error") (internal quotation omitted); *Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir. 1987) (noting that court might in future "encounter a case where the inconsistency in the special interrogatories is so obvious that it would be proper to hold

We hold that the assault and battery and excessive force verdict was inconsistent with the written interrogatory answer and that a new trial is warranted for Hundley's estate on the assault and battery and excessive force claims.

### III

Even assuming defendants were not liable for assault and battery and excessive force (because Gaines fired the shot in self-defense), plaintiffs offered a separate theory of liability at trial: that Officer Gaines was liable for the shooting death because he was negligent in stopping Hundley in the first place, and was therefore responsible for the harm that followed.

The jury found that defendants were not liable for assault and battery and excessive force, but the jury found for plaintiffs on the negligence claim – namely, that Officer Gaines acted unreasonably in initially approaching Hundley in the parking lot. The jury also found that the negligent stop proximately caused Hundley's death.

On appeal, defendants contend that the initial stop – even if negligent – was not a proximate cause of Hundley's death as a matter of law. We agree.

Given the procedural posture of this case, the precise question before us is whether plaintiffs can recover damages arising out of Hundley's death because of Officer Gaines's initial negligent stop even if defendants are not liable on the assault and battery and excessive force claims – in other words,

---

that the trial judge had an independent responsibility to act despite trial counsel's silence").

even if Officer Gaines shot Hundley in self-defense.[4] We think the answer to that question is quite clear: In such a scenario, it cannot be said that Officer Gaines's negligence in approaching Hundley proximately caused the shooting death of Hundley. *See District of Columbia v. Price*, 759 A.2d 181, 184 (D.C. 2000) (proximate cause requires both (i) causal relationship between negligent act and plaintiff's harm and (ii) foreseeability of injury); *see also Butts v. United States*, 822 A.2d 407, 418 (D.C. 2003). Rather, it was Hundley's intervening intentional misconduct that caused Officer Gaines's intervening shooting, which in turn caused the death of Hundley.

D.C. follows the black-letter tort law principle that an intervening force breaks the chain of proximate causation when that intervening force is sufficiently unforeseeable as to constitute a superseding cause. *See Butts*, 822 A.2d at 418; *see also Majeska v. District of Columbia*, 812 A.2d 948, 951 (D.C. 2002) ("We have held that a defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears highly extraordinary in retrospect.") (internal quotations omitted); *District of Columbia v. Carlson*, 793 A.2d 1285, 1290 (D.C. 2002). It is only "where misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed for consequences to which such intervening acts contributed." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 44, at 313 (5th ed. 1984); *see* RESTATEMENT (SECOND) OF TORTS § 448 (1965) ("The act of a third person in committing an intentional tort or crime is a superseding cause of harm . . . unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a

---

[4] If the jury had found for plaintiffs on assault and battery and excessive force, the negligence claim would be irrelevant because it would add nothing to plaintiffs' damages for the shooting death.

third person might avail himself of the opportunity to commit such a tort or crime."); *see generally* RESTATEMENT (SECOND) OF TORTS §§ 440-453. Although cases applying that doctrine typically involve the intervening acts of third parties, the principles underlying the doctrine logically apply to this two-party situation as well. As a matter of law, it is not ordinarily reasonable to foresee that a citizen will react to a police stop by attacking the detaining officer, thereby triggering a situation that requires the officer to use deadly force in self-defense. On the contrary, citizens have a duty to obey a police officer's orders, and officers are entitled to assume that citizens will comply with their orders. *Cf. Majeska*, 812 A.2d at 951 ("There is a general proposition that an individual is presumed to exercise reasonable care and obey the law."). And police officers could not protect the public if tort law deterred them from approaching and detaining potentially violent suspects. For purposes of D.C. tort law, therefore, Hundley's failure to comply with Officer Gaines's orders was akin to an intervening force that, as a matter of law, was sufficiently unforeseeable that it constituted a superseding cause breaking the chain of proximate causation between the negligent stop and the shooting death.

The strained nature of plaintiffs' negligence-and-proximate-cause theory in this case is also underscored by comparison to the contributory negligence doctrine. Under that doctrine, which the District of Columbia follows, the plaintiff's contributory negligence ordinarily "bars recovery against a defendant whose negligent conduct would otherwise make him liable to the plaintiff for the harm sustained by him." RESTATEMENT (SECOND) OF TORTS § 467; *see Massengale v. Pitts*, 737 A.2d 1029, 1031-32 (D.C. 1999). If a plaintiff's *negligent* act eliminates a defendant's liability for the plaintiff's harm, it follows that a plaintiff's *intentional* wrongful act also eliminates a defendant's liability for the plaintiff's harm. Any other conclusion would be entirely illogical.

14

The flaw in plaintiffs' negligence-and-proximate-cause theory is perhaps best illustrated by a hypothetical rather than by dry recitation of black-letter tort principles. Suppose, for example, that A unintentionally but negligently drives into B's car. Suppose that B then gets out of his car and attacks A with a knife. What can A do in those circumstances? Under plaintiffs' theory, A could not lawfully defend herself and thus would be liable for any injuries she inflicted on B while fending off B's attack. Such a result is obviously absurd, and further makes clear that the negligent stop here cannot be the basis for plaintiffs to recover damages for the shooting death.

One final point warrants mention. Hundley's estate cites D.C. precedent indicating that officers may be liable when they negligently approach or detain mentally ill or otherwise mentally impaired individuals, who in turn cause a disturbance requiring the use of force against them. *See District of Columbia v. Evans*, 644 A.2d 1008, 1019, 1021-22 (D.C. 1994); *cf. District of Columbia v. Peters*, 527 A.2d 1269, 1272-73 (D.C. 1987). But that narrow exception does not apply here. No evidence suggests that Hundley was mentally ill at the time of the stop, or that Officer Gaines knew or should have known as much. Therefore, this case is governed by general principles of tort law: It was not legally foreseeable that Hundley would threaten Officer Gaines as a result of Officer Gaines's initial stop – and the stop therefore cannot be a proximate cause of Hundley's death.

In sum, applying D.C. law, we conclude as a matter of law that plaintiffs cannot establish that the initial negligent stop proximately caused the shooting death.[5]

---

[5] Even if Officer Gaines had shot Hundley without justification, the negligent stop could not be considered the proximate cause of the shooting death. Rather, in such a scenario, Officer Gaines's

15

\* \* \*

We reverse the judgment of the District Court and remand for a new trial for Hundley's estate on the assault and battery and excessive force claims.

*So ordered.*

---

intentional shooting would be analogous to the intervening act. Of course, this point is somewhat theoretical because defendants in such a scenario would be directly liable for assault and battery with respect to the wrongful intentional shooting.