ROTH, Circuit Judge,
dissenting;
While the members of the majority may be satisfied that Newsuan’s attack on Officer Dempsey was sufficient to sever any causal chain, I believe that Newsuan’s reaction was, unfortunately, all too foreseeable. Directive 136 — the police regulation that Officer Dempsey supposedly violated — states that its main objective “is to aid and protect the interests of the [mentally disturbed person], innocent bystanders, and family members in the immediate area, without compromising the safety of all parties concerned, including the police officers. This is best accomplished by DEESCALATING THE INCIDENT” (emphasis in original).[1] The purpose of regulations like Directive 136 is clear — to reduce the risk of a deadly confrontation with an extremely vulnerable population. *355 That such a regulation is necessary to reduce the risk of a deadly confrontation demonstrates that deadly confrontations are a foreseeable result of ignoring the regulation.
Viewing the facts before us in a light most favorable to the non-movant, Officer Dempsey, ignoring the Philadelphia Police Department’s calculated use of caps lock, escalated the incident. Facing a naked, unarmed man who by all accounts had not been reported to the police as an “immediate threat to life or physical danger” to anyone, Officer Dempsey approached Newsuan and beckoned him to “come here,” without backup, in violation of police regulation. By Dempsey’s own account, his approach was not made to apprehend and secure Newsuan, but was made because Dempsey “wanted to see if [Newsuan] was in some type of distress. He obviously needed some type of care.”[2] By knowingly violating a police department regulation designed to keep mentally disturbed individuals safe, Dempsey set into motion the confrontation that ultimately led to New-suan’s death - a confrontation whose foreseeability was the impetus for the establishment of Directive 136.
Our limited precedent on the issue of superseding causes in excessive force cases is instructive. In Lamont v. New Jersey, we held that an individual’s quick hand movement — perceived by officers as drawing a weapon — occurring after officers had violated police procedures to pursue the individual, constituted a superseding cause.[3] In so holding, we noted that a contrary holding would “tend to deter police officers ‘from approaching and detaining potentially violent suspects.’ ”[4] But the officers in Lamont were pursuing an individual who, they expected, was armed and potentially dangerous. The officers were so informed when they chose to violate police procedures in pursuing him. Such cannot be said of Officer Dempsey here, as New-suan was clearly unarmed and had not been exhibiting violent conduct prior to their interaction. There is an important distinction between these two types of cases — one in which an officer, through his conduct, creates the situation that calls for the use of force, and one in which the officer’s misconduct, while perhaps factually linked to the eventual use of force, does not contribute to the “dangerous situation.”[5] Additionally, holding that New-suan’s behavior was not a superseding cause would not create the perverse deterrent effects we feared in Lamont: to the contrary, deterring police officers from approaching mentally disturbed suspects in a way that may compromise the safety of either the officer or the individual is an end we should seek to achieve, rather than avoid.
I am also not persuaded that Newsuan’s attack was an unforeseeable result of his being tased by Officer Dempsey. Taking the facts in the light most favorable to the non-movant, Dempsey was aware that Newsuan was on PCP at the time of their encounter. The Philadelphia Police Department teaches its officers that a taser strike may fail to subdue a suspect on PCP due to the drug’s effects on pain tolerance.[6] It was therefore foreseeable to Officer Dempsey that his taser would be ineffective against Newsuan. The most favorable *356 account of the facts prior to -Newsuan’s being tased is that Newsuan was “approaching” Officer Dempsey — presumably in response to Dempsey’s request that Newsuan “come here.” A jury could reasonably conclude that Officer Dempsey, by firing his taser, took an “immediate aggressive action” in violation of police department regulations and in doing so escalated the situation and created a risk of harm to both himself and to Newsuan.
The death of individuals with mental health problems at the hands of the police continues to occur across the country.[7] The first line of defense against these incidents is the establishment of police regulations designed to prevent interactions between police officers and mentally disabled people from escalating into deadly confrontations. Declaring that an officer who disregards such a regulation has not proximately caused a violent confrontation that the regulation is in plaeé to prevent renders the regulation toothless. Given the available factual accounts of the events leading up to Newsuan’s eventual death, including the possible disregard of a regulation that was designed to guard against violent confrontations, I cannot say that “there is no evidence from which a jury could reasonably find the required proximate, causal nexus between the careless act and the resulting injuries.”[8]
For -the' above reasons, I respectfully dissent. I would reverse the judgment , of the District Court and remand this case for further proceedings,

. J.A. at 102-03.

. 637 F.3d 177, 186 (2011).

. Id. (quoting Hundley v. District of Columbia, 494 F.3d 1097, 1105 (D.C. Cir. 2007)).

.See Estate of Starks v. Enyart, 5 F.3d 230 (7th Cir. 1993) (officer who jumped in front of a speeding car, then used deadly force to stop driver, would not be entitled to qualified immunity).

.J.A. 244.

. E.g., Kate Mather and James Queally, More Than a Third of People Shot by L.A. Police Last Year Were Mentally Ill, LAPD Report Finds, L.A. Times (Mar. 1, 2016), http://www,latimes. com/local/lanow/la-me-ln-lapd-use-of-force-report-20160301 -story.html.

. Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 318 (3d Cir. 1999) (quoting Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 620 (10th Cir. 1998)).