2001-NMCA-093

34 P.3d 133

**STATE of New Mexico, Plaintiff–Appellee,**

*v.*

**Jason Pete ROPER, Defendant–Appellant.**

**No. 21,258.**

Court of Appeals of New Mexico.

Sept. 7, 2001.

Certiorari Granted, No. 27,154, Oct. 30, 2001.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} This case raises multiple issues concerning the sufficiency of the evidence for Defendant's various convictions and the manner in which he was sentenced for them. We hold that the evidence was in all respects sufficient and that the trial court did not err in any manner in its sentencing decisions.

{2} Although charged with fifteen offenses, including attempted murder, arising out of a shooting from an automobile in which two young men were injured, Defendant was convicted only of two counts of aggravated assault with a deadly weapon (a sawed-off shotgun), one count of conspiracy to commit shooting from a vehicle, and one count of conspiracy to tamper with evidence. The latter count is not at issue in this appeal. Defendant contends that (1) the evidence was insufficient to support the conspiracy to shoot conviction; (2) conviction and sentencing on the two counts of aggra-

vated assault violated double jeopardy; (3) none of the three reasons given by the trial court for increasing Defendant's sentence for aggravating factors was lawful; (4) double jeopardy was violated by using the same facts to convict Defendant for aggravated assault, enhance his sentence with the firearm enhancement, and increase the sentence for aggravating factors; (5) failure to submit the aggravating factors to the jury for a determination beyond a reasonable doubt violated Defendant's due process rights; (6) allowing the two co-defendants to testify against Defendant under plea agreements that provided for leniency violated Defendant's due process rights; and (7) the verdicts are inconsistent. We find no merit in any of the contentions and accordingly affirm.

## FACTS

{3} Nineteen-year-old Defendant and two friends, Paul Gutierrez and Samuel Lopez, were drinking in a motel in Albuquerque with Defendant's girlfriend and her sister. Defendant got into an argument with his girlfriend, and he and his friends left the motel to pick up girls. They had two guns in the car, a sawed-off shotgun and a nine-millimeter handgun. It was undisputed that Mr. Gutierrez was the driver of the car, Defendant was the front-seat passenger, and Mr. Lopez was in the back seat.

{4} Mr. Gutierrez's car stopped at a fast-food restaurant where there were girls using a pay phone. One of the girls approached Defendant. She said he was drunk, "ugly," and "running his mouth"; she went back to where her friends were using the phone. In the meantime, there were some young men across the parking lot in front of another restaurant. Mr. Gutierrez was addressing them, "talking garbage" and asking them "what are you claiming?" This question was explained to mean that Mr. Gutierrez wanted to know to what gang the young men belonged. The young men could not hear, and one of them said "What?" Mr. Gutierrez apparently perceived that as a disrespectful response and responded by saying "What" himself in an angry fashion.

{5} The next thing any of the witnesses knew, the shotgun and the nine-millimeter handgun were pointing out of the driver's window of Mr. Gutierrez's car, and multiple shots were fired from the handgun, hitting two of the young men in the parking lot, severely injuring one of them. Several witnesses testified that it appeared to them that the driver, Mr. Gutierrez, was holding the shotgun while the front passenger, Defendant, was shooting the handgun by leaning in front of the driver with the gun out the window. One witness and Mr. Lopez testified that Mr. Lopez had the shotgun. Mr. Lopez said he stuck the shotgun out of the car when Mr. Gutierrez was "talking garbage" to the victims because he wanted to show them that there was a gun in the car. Other witnesses said that Defendant had the shotgun, while Mr. Gutierrez held the handgun. After the shooting, Mr. Lopez bragged to his cousin that he and his friends did a "drive-by" "because some guys were talking shit."

{6} Mr. Gutierrez and Mr. Lopez both testified against Defendant pursuant to deals whereby they were given leniency in return for testifying truthfully, which they understood to mean that they would be expected to testify that Defendant was the person who did the shooting. The jury, however, convicted Defendant only of conspiracy to shoot from a motor vehicle and two counts of aggravated assault with the shotgun, the latter being submitted as lesser included offenses of aggravated battery of the two victims who were shot and injured.

## DISCUSSION

### 1. Sufficiency of the Evidence of Conspiracy

{7} Defendant relies on State v. Mariano R., 1997–NMCA–018, 123 N.M. 121, 934 P.2d 315, to support his contention that the evidence was insufficient. We reversed a conspiracy to shoot conviction in that case on facts similar to the facts of this case: the charge was conspiracy, the underlying offense involved shooting from a vehicle, multiple people in a car were involved, the defendant knew that there were guns in the car, and he was present when one was fired. Id. ¶¶ 2, 5. In Mariano R., we said that, while we reviewed the evidence "in light of common knowledge or common experience,"

"common knowledge and experience must not be confused with cynical speculation. In reviewing a determination of guilt, we cannot sanction a view that assumes the worst about human nature. That is an essential message of the presumption of innocence. Evidence is required, more evidence than was presented here." *Id.* ¶ 7 (internal quotation marks and citation omitted).

{8} However, notwithstanding the superficial similarity of the basic facts of *Mariano R.* with the facts of this case, there was much more evidence in this case to sustain a charge of conspiracy to commit shooting from a motor vehicle. It must be remembered that, while conspiracy requires an agreement, the agreement can be nothing more than a mutually implied understanding that can be proved by the cooperative actions of the participants involved. *State v. Smith,* 102 N.M. 512, 514, 697 P.2d 512, 514 (Ct.App. 1985). According to the evidence in the light most favorable to the State, each of the occupants of the vehicle except Defendant were involved in trash-talking with the victims and all were involved in displaying weapons so that the victims would know who they were dealing with. There was evidence that Defendant was the actual shooter of the nine-millimeter handgun, although he was not convicted thereof. From this evidence, the jury could easily infer that all occupants of Mr. Gutierrez's vehicle joined together in a mutually implied understanding to "show up" the young men in the parking lot who were perceived to be members of another gang by shooting at them from the vehicle.

{9} In contrast to *Mariano R.* and other cases on which Defendant relies, in which the defendants were merely acquainted with the perpetrators and present during the crimes, Defendant here was an active participant. The other people in the car were active participants also. The evidence was that at least one of the guns was taken from the motel room to the car. The natural inference was that Defendant and his friends were going out looking for trouble pursuant to a mutually implied understanding that, if trouble were found, the guns would be used. That situation occurred, the guns were used, and one of the friends bragged about it later.

The foregoing evidence was sufficient to prove Defendant's guilt of conspiracy to shoot from a vehicle.

## 2. Separate Convictions for Two Counts of Aggravated Assault

{10} Defendant contends that his convictions and sentences for two counts of aggravated assault stemming from his one act of pointing a shotgun at the two victims violates his rights under the double jeopardy clauses of the state and federal constitutions. Although acknowledging that unitary conduct is only the first step of the inquiry under the analysis set out in *Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991), Defendant contends that the second step of that analysis requires a decision in his favor because the other factors (time between acts, location of acts, intervening events, distinctions in acts, defendant's intent, and number of victims) all, with the exception of number of victims, support a finding of legislative intent to punish only once for the unitary act. We disagree.

{11} The Court in *Herron* indicated that multiple victims will likely give rise to multiple offenses. *State v. Barr,* 1999 NMCA 081, ¶ 16, 127 N.M. 504, 984 P.2d 185. Nonetheless, Defendant attempts to find comfort in our recent decision in *State v. Castañeda,* 2001 NMCA 052, 130 N.M. 679, 30 P.3d 368 (N.M.Ct.App. 2001). In that case, we held that the defendant's driving while intoxicated with three unrestrained children in the car could amount to only one count of child abuse not resulting in death or great bodily harm. *Id.* ¶ 18. We reasoned that the focus of the legislature and its intent was to punish based on the conduct that could potentially result in physical harm rather than to punish based on the actual result of the conduct. *Id.* ¶ 17. Thus, the defendant's prohibited conduct that could potentially result in physical harm to the children was driving while intoxicated, a single act. We contrasted the case with *State v. House,* 2001 NMCA 011, 130 N.M. 418, 25 P.3d 257, in which the conduct on which the legislature focused was death, and therefore the killing of four people was four offenses of homicide by vehicle even though there was only one act of driving and one

accident. *Castañeda*, 130 N.M. 679, 30 P.3d 368, 2001 NMCA 052, ¶ 16.

{12} Defendant relies on *Castañeda* for the propositions that, had he been convicted of the batteries of the two victims, two counts would be legally supportable because there would be two separate harms, but having been convicted only of assault, only one count is supportable. Defendant's argument is premised on the idea that the assault statutes are designed to protect against the potential physical harm of a battery. We think that Defendant's premise misperceives the legislative intent behind the assault statutes. We stated in *State v. Cowden*, 1996–NMCA–051, ¶ 12, 121 N.M. 703, 917 P.2d 972, that the harm to the victim protected by the assault statutes was mental harm, i.e., putting persons in fear, while the harm protected by the battery statutes was physical harm, i.e., physical injury to persons. Thus, there are distinct actual harms suffered by victims that are protected by each statute. The legislative focus of the assault statutes being the protection of victims from mental harm, it is therefore permissible without offending double jeopardy principles to convict and sentence a defendant for two counts of assault for pointing a gun at two persons at the same time.

{13} Defendant does not challenge the sufficiency of the evidence to support his convictions for aggravated assault. However, as part of his double jeopardy argument, he contends that one of the victims never testified that he was in fear. *See State v. Mata*, 86 N.M. 548, 551, 525 P.2d 908, 911 (Ct.App.1974). This victim testified that he saw the shotgun, stared at it, and then fell on the ground. At that point, he had actually been shot by the handgun. There was abundant evidence that everyone else in the vicinity of the shooting was afraid after seeing the guns pointing out of the car. The inferences from this evidence are sufficient to support a finding of the mental harm on which the assault statutes are focused with regard to this victim.

### 3. Improper Use of Aggravating Circumstances

{14} Defendant contends that each of the three reasons stated by the trial court for

aggravating Defendant's sentence was improper. The trial court's three reasons were that (1) Defendant pointed "a particularly dangerous and fearsome weapon-a sawed-off shotgun" at the victims, (2) the shotgun and other firearm were pointed and fired at a large group of people causing trauma to a large number of victims, and (3) the incident was entirely unprovoked by the actual victims of the shooting or anyone else in the vicinity.

{15} Defendant contends that the first two reasons implicate use of a firearm that is expressly prohibited from being used as an aggravating factor pursuant to NMSA 1978, § 31–18–15.1(B) (1993) (stating that the "judge shall not consider the use of a firearm ... as [an] aggravating circumstance[ ]"). We disagree. The purpose of Section 31–18–15.1(B) is to insure that a defendant's sentence is not doubly enhanced on the basis of identical facts. NMSA 1978, § 31–18–16(A) (1993) requires a one-year increase in any sentence for a conviction in which a firearm was used in its commission. It is any use of any firearm that invokes Section 31–18–16. The first two reasons given by the trial court are not aggravation because of the mere use of any firearm. Those reasons were that Defendant used a particularly fearsome firearm and the entire episode in which Defendant was involved put a large number of people at risk.

{16} One of the seminal cases in New Mexico on aggravating circumstances is *State v. Wilson*, 97 N.M. 534, 641 P.2d 1081 (Ct. App.1982). That case is dispositive of many of Defendant's contentions relating to the aggravation of his sentence. In particular, as far as the use of the sawed-off shotgun and the use of guns to put large numbers of people in fear, *Wilson* points out, in an analogous circumstance, that "[t]here is a difference between a knifing in a Saturday night social fight and a knifing after lying in wait for the victim." *Id.* at 538, 641 P.2d at 1085. To a like effect here, there is a difference between a basic use of a firearm and a particular use that involves a very dangerous firearm and circumstances that involve a large number of people. Because Section

31–18–15.1(B) prohibits only the basic use of a firearm from being used as an aggravator, there was no error in the trial court's use of other circumstances involving the type of firearm with its potential for use here to create generalized fear and indiscriminate harm.

■ {17} Defendant contends that the third reason, which he characterizes as "lack of provocation," is an element of the crime of aggravated assault and therefore cannot be used as an aggravating factor. He also contends that provocation can be a mitigating factor and therefore, he reasons, lack of provocation cannot be an aggravating factor in the same way that failure to show mitigation cannot be an aggravating circumstance for death penalty sentencing under *State v. Allen,* 2000 NMSC 002, ¶ 107, 128 N.M. 482, 994 P.2d 728. *See also State v. Callaway,* 109 N.M. 564, 569, 787 P.2d 1247, 1252 (Ct. App.1989), *rev'd on other grounds,* 109 N.M. 416, 785 P.2d 1035 (1990) (holding that while cooperation with authorities may be a mitigating factor, failure to cooperate may not be used to aggravate a sentence).

{18} These cases are not logically probative on Defendant's contentions. Death penalty sentencing is the subject of its own statute, which defines a limited number of aggravating circumstances, and absence of mitigating circumstances is simply not one of them. *See* NMSA 1978, § 31–20A–5 (1981). As explained in *Callaway,* the reason that failure to cooperate cannot be used to aggravate is that it implicates a defendant's right to remain silent. 109 N.M. at 569, 787 P.2d at 1252. There is simply nothing in either the *Callaway* or the *Allen* cases standing for the general proposition that the opposite of a mitigating circumstance can never be used as an aggravating circumstance.

{19} In contrast, the discussion in the *Wilson* case shows that all matters relevant to the event for which Defendant is tried and convicted are circumstances that may aggravate or mitigate and result in an altered sentence. *Wilson,* 97 N.M. at 537–39, 641 P.2d at 1084–86. Therefore, the trial court did not err in relying on the nature of the particular firearm used, the large number of people victimized by the event, and the com-plete innocence of all bystanders, including the two victims who were shot.

## 4. Violation of Double Jeopardy in Use of Same Facts

■ {20} Defendant contends that his double jeopardy rights were violated by the trial court's use of the same facts to triply punish him by (1) the basic sentence for aggravated assault with a deadly weapon, (2) the one-third increase for aggravation, and (3) the one-year increase for the firearm enhancement. As we explained above, the one-third increase for the type of firearm used and accompanying circumstances and potential for harm was not based on the fact alone that a firearm was used. In *State v. Gonzales,* 95 N.M. 636, 639, 624 P.2d 1033, 1036 (Ct.App.1981), *overruled on other grounds by Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981), we specifically ruled against the defendant's contention that double jeopardy would be violated by conviction and sentence for aggravated battery with a deadly weapon as well as application of the firearm enhancement because, while all the basic conviction requires is the use of any weapon, the firearm enhancement requires use of a specific type of weapon. Thus, here, there was no error in punishing Defendant with the basic sentence for using any weapon, with the firearm enhancement for using any firearm, and with aggravation for using the particularly fearsome sawed-off shotgun under the circumstances of this case.

## 5. *Apprendi v. New Jersey*

{21} Defendant contends that the aggravating circumstances statute is unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in that it does not require the factors used to increase a sentence to be found by a jury based on proof beyond a reasonable doubt. We answered this contention adversely to Defendant in *State v. Wilson,* 2001 NMCA 032, ¶ 4, 130 N.M. 319, 24 P.3d 351, *cert. granted,* 130 N.M. 459, 26 P.3d 103 (2001), and see no reason to revisit the issue here.

### 6. Violation of Due Process Due to Plea Agreements

{22} Relying on the panel opinion in *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998), *opinion vacated on rehearing*, 165 F.3d 1297 (10th Cir.1999) (en banc), Defendant contends that his due process rights were violated by the State's "purchase" of the testimony of Mr. Lopez and Mr. Gutierrez. Apart from the fact that the panel opinion did not, by its express terms, state a constitutional rule, 144 F.3d at 1361, we find the en banc opinion more persuasive under the facts of our case, particularly inasmuch as the jury must have viewed a good deal of the co-conspirator testimony with suspicion when it did not convict Defendant for the actual shooting. The danger to Defendant's due process rights was minimal in this case.

### 7. Inconsistent Verdicts

{23} Defendant claims he should receive a new trial on the conspiracy to commit shooting from a vehicle conviction because (1) there was insufficient evidence to support it as argued in his first issue, (2) when the trial court merged the conspiracy to commit aggravated assault conviction with it, the trial court selected the conspiracy crime that made the least sense inasmuch as Defendant was acquitted of the charges of actually shooting the gun that injured the victims, and (3) conviction of conspiracy to shoot from a vehicle was inconsistent with the acquittal for conspiracy to commit aggravated battery. If there was insufficient evidence to support the conspiracy for which Defendant was convicted and sentenced, the remedy would be a discharge, not a new trial. *See State v. Benton*, 118 N.M. 614, 615, 884 P.2d 505, 506 (Ct.App.1994). Since we have concluded above that there is sufficient evidence, we do not discuss this ground for a new trial further.

{24} Defendant successfully sought to have the trial court merge his two conspiracy convictions. This action was entirely proper because there appeared to be only one conspiracy. *See State v. Jackson*, 116 N.M. 130, 134, 860 P.2d 772, 776 (Ct.App. 1993). Defendant's arguments concerning his alleged acquittal on charges of shooting the gun or conspiracy to commit aggravated battery are not legitimate arguments on appeal. We have frequently said that our business is to review the verdicts of conviction, and not concern ourselves with any alleged acquittals, and thus we do not entertain contentions alleging that the verdicts are irreconcilable. *See State v. Fernandez*, 117 N.M. 673, 680, 875 P.2d 1104, 1111 (Ct.App.1994); *State v. Leyba*, 80 N.M. 190, 195, 453 P.2d 211, 216 (Ct.App.1969). We will not grant Defendant a new trial on this ground.

### CONCLUSION

{25} The judgment and sentence are affirmed.

{26} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and JONATHAN B. SUTIN, Judge.