This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 34,813**

**HERMAN VANNATTER,**

Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J.C. Robinson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Defendant appeals from a conditional discharge order entered after a jury found him guilty of one count of child abuse by endangerment, in violation of NMSA 1978, Section 30-6-1(D)(1) (2009). We issued a calendar notice proposing to affirm.

Defendant filed a memorandum in opposition, which we have duly considered. We are not persuaded by his arguments and therefore affirm.

{2}     In his docketing statement, Defendant challenged the district court's denial of his motions for a directed verdict at the close of the State's case-in-chief and at the close of his case-in-chief, and he asserted that there was insufficient evidence to support the jury's finding that he was guilty of one count of child abuse by endangerment. [DS 1, 3-4] We addressed these issues collectively, as a sufficiency of evidence challenge, and we proposed to affirm. [CN 1-7]

{3}     In our calendar notice, we presumed that the jury was given UJI 14-604 NMRA (2014)[1], because neither the docketing statement nor the record proper included the jury instructions given. [CN 4] Therefore, we presumed that the jury was required to determine whether Defendant "caused [his son ("Child")] to be placed in a situation which endangered the life or health of [Child]." [CN 4 (quoting UJI 14-604 NMRA (2014)]. We further presumed that the jury was required to determine whether Defendant acted "intentionally" or "with reckless disregard and without justification." [Id.] To find that Defendant acted with reckless disregard, we presumed the jury was

---

[1]Defendant's trial was held on March 16, 2015 [DS 1], shortly before this jury instruction was withdrawn. *See* UJI 14-604 NMRA (2015) ("Pursuant to Supreme Court Order No. 15-8300-001, UJI 14-604 . . . , relating to essential elements of child abuse, intentionally or negligently 'caused[,]' without great bodily harm or death, was withdrawn effective for all cases filed or pending on or after April 3, 2015. For provisions of former instruction, *see* the 2015 NMRA on *NMONESOURCE.COM*.").

required to find that Defendant "knew or should have known [his] conduct created a substantial and foreseeable risk, [he] disregarded that risk and [he] was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child]." [CN 4-5 (quoting UJI 14-604 NMRA (2014)] Based on the record before this Court, we proposed to conclude that there was substantial evidence to support the jury's verdict. [CN 5-7]

{4}     In response to this Court's calendar notice, Defendant filed a memorandum in opposition. Defendant maintains that "the State did not prove beyond a reasonable doubt that his conduct created a substantial and foreseeable threat of serious injury to his son, an essential element of the crime." [MIO 1] Significantly, Defendant does not contest the underlying facts relied upon in our calendar notice. [*See generally* MIO 1-2, 10-11] He also confirmed that the jury was given UJI 14-604 NMRA (2014), and he clarified that the jury was instructed "on an intentional theory of child endangerment" and the term "intentional" was defined for the jury. [MIO 5-6 (citing UJI 14-610 NMRA 2014)].

{5}     Defendant argues that, even viewing the evidence in the light most favorable to the State, no rational jury could have found beyond a reasonable doubt that Child "was endangered simply by being a passenger in a car driven by his mother and pursued by [Defendant] on the highway, then remaining in the car, once parked, while

3

[Defendant] banged on the windows during a custody dispute with his mother." [MIO 5] *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict.").

{6}     Defendant claims that the State did not prove that he intentionally "placed [Child] in a situation which endangered his life or health." [MIO 6] *See* UJI 14-604 NMRA (2014); *see also* UJI 14-610 NMRA (2014) ("A person acts intentionally when the person purposely does an act. Whether the [defendant] acted intentionally may be inferred from all of the surrounding circumstances, such as [the defendant's] actions or failure to act, conduct and statements."). More specifically, Defendant asserts that "[t]he State did not present evidence that [he] necessarily placed his son in the direct line of physical danger of a significant and articulable harm, or a harm that was reasonably likely to come to pass by his son's presence in his mother's car which [he] pursued on the highway[.]" [MIO 7] Defendant further argues that "a mere possibility that harm may result from a defendant's conduct is not enough to sustain a conviction[,]" and his conduct in this case is not the type of conduct that the Legislature intended to classify as a third-degree felony. [MIO 7; *see also* MIO 6-10] *See State v. Chavez*, 2009-NMSC-035, ¶ 16, 146 N.M. 434, 211 P.3d 891("[B]y

4

classifying child endangerment as a third-degree felony, our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers.").

{7}    While we agree that "the relevant conduct must create more than a 'possibility' of harm before it may be punished as a felony[,]" *see id.* ¶ 18, the gravity of the threatened harm in this case is significant. *See id.* ¶ 23 ("It is the gravity of the risk that serves to place an individual on notice that his conduct is perilous, and potentially criminal, thereby satisfying due process concerns."). Defendant concedes that he was supposed to meet his ex-wife, Gina Turrieta, and their minor son, Child, to pick up Child; Ms. Turrieta was running late; she and Defendant spoke on the telephone about when and where to meet; and "[Defendant] became upset during the conversation and threatened to use his truck to strike Ms. Turrieta's car." [MIO 1, 10-11; *see also* DS 2; RP 49] Sometime after the telephone conversation, Defendant saw Ms. Turrieta, their adult daughter (Nicole), and Child traveling in a car on the highway passing in the opposite direction; he turned around in his truck and followed them closely, bumper-to-bumper; and "Ms. Turrieta accelerated and drove at a speed above the speed limit to get away from him." [MIO 2; *see also* MIO 11; DS 2; RP 49] Nicole called 911, and the dispatcher advised her to tell her mother to pull over and to wait for the police to arrive; and Ms. Turrieta, Nicole, and Child pulled over and waited in

a nearby parking lot. [MIO 2; DS 2; RP 49] According to Defendant, Ms. Turrieta testified that Defendant "repeatedly backed up and pulled forward[,]" while Defendant testified that he pulled up behind Ms. Turrieta's vehicle and "revved his engine." [MIO 2; DS 2-3] Defendant got out of his vehicle, went to Ms. Turrieta's vehicle, banged on her window, and demanded that his son go with him. [MIO 2, 11; DS 3; RP 49] Child started to get out of his mother's vehicle until his mother and sister told him not to leave. [MIO 2; DS 3] Defendant returned to his vehicle without his son; drove way; was stopped by a police officer; and arrested for driving while under the influence of alcohol (DWI). [MIO 2, 11; DS 3; RP 49] The jury was informed that Defendant pleaded no contest to DWI as a result of the incident. [MIO 2, 11; DS 3, 11] There was also evidence presented that Defendant had sounded intoxicated on the telephone prior to this incident. [MIO 1; DS 3]

**{8}** Despite the fact that Defendant was acquitted of two counts of aggravated assault with a deadly weapon based on essentially the same conduct [MIO 11-12; RP 146], we conclude that there was ample evidence to support the jury's finding that Defendant intentionally endangered Child's life or health on the day in question. *See Cunningham*, 2000-NMSC-009, ¶ 26 (stating that in reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

6

essential elements of the crime beyond a reasonable doubt" (alteration, internal quotation marks, and citation omitted)); *see also State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d 133 (stating that we review verdicts of conviction and will not entertain a contention that an acquittal is irreconcilable with a guilty verdict). To the extent that there was conflicting testimony, the jury was free to reject Defendant's version of the facts. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

{9}     For the reasons stated in our notice and in this opinion, we affirm.

{10}    **IT IS SO ORDERED.**


_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

7