This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                             **NO. 33,241**

**MICHAEL TERRAZAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant appeals from his felony conviction for child abuse by endangerment (negligently caused, no death or great bodily harm) of his two-month-old infant son (T.T.), for which he received an enhanced sentence as a habitual offender. We affirm.

**BACKGROUND**

**{2}** Defendant's conviction arose from an altercation between Defendant and Mother while she was holding T.T. Mother's minor daughter (A.C.) was also present and witnessed the conflict. As a result of the altercation, Defendant was charged with: Count 1, negligent child abuse of A.C., contrary to NMSA 1978, § 30-6-1(D) (2009)[1], Count 2, negligent child abuse of T.T., also contrary to Section 30-6-1(D); and Count 3, battery against Mother, a household member, contrary to NMSA 1978, § 30-3-15 (2008).

**{3}** At trial, Mother testified that while she and Defendant were engaged in an argument outside her residence, she was cradling T.T., who was two months old and weighed six pounds, in her arms. Mother explained that Defendant became angry and started "coming towards [her]." She detailed how she began "backing up with [T.T] . . . when [Defendant] just headbutted [her] with [T.T.] in [her] arms." Mother

---

[1]During the pendency of this case, our Supreme Court held that "criminally negligent child abuse" shall be re-labeled as "reckless child abuse." *State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850 (internal quotation marks and citation omitted). Consistent with *Consaul*, we refer to Defendant's conviction of "negligently caused" child abuse as "reckless child abuse." *Id.*

clarified that Defendant "hit [her] with his head on [her] head." Mother recounted: "I just held on to [T.T.] really tight in hopes that I wouldn't drop him. I lost my balance, and I was able to recover." Although Mother did not fall, she explained that after being struck, she was "jolted back and lost [her] balance." Mother explained that she then ran from Defendant, who pursued her into her residence. A.C., who was watching the altercation from a kitchen window, testified that while she did not actually see "anything like a headbutt," she saw Defendant "push[] his chest out and . . . [stick] his forehead against [Mother's] . . . [making] her walk backwards" while she was holding T.T.

{4} At the conclusion of trial, the jury acquitted Defendant of Counts 1 and 3, but convicted him of Count 2. As a habitual offender, Defendant was sentenced to a four-year term of imprisonment; however, the district court suspended all but eighteen months, followed by a two-and-a-half-year period of probation. Defendant appeals, arguing that: (1) he did not receive a fair trial as the jury instructions for Count 2 contained not only the elements of reckless child abuse but also intentional child abuse, a crime for which he was never charged; (2) there was insufficient evidence of reckless child abuse as to T.T.; (3) Defendant's conviction is inconsistent with his having been acquitted of Counts 1 and 3.

**I.    Count 2 Jury Instructions**

3

{5}    The jury was instructed, in relevant part, that in order to find Defendant guilty of Count 2:

> [T]he [S]tate must prove . . . beyond a reasonable doubt each of the following elements of the crime:
>
> 1.    [Defendant] caused [T.T.] to be placed in a situation which endangered the life or health of [T.T.];
>
> 2.    [Defendant] acted intentionally or with reckless disregard and without justification.
>
> To find that [Defendant] acted with reckless disregard, you must find that [Defendant] knew or should have known [Defendant's] conduct created a substantial and foreseeable risk, [Defendant] disregarded that risk and [Defendant] was wholly indifferent to the consequences of the conduct and to the welfare and safety of [T.T.][2]

{6}    On appeal, the State concedes that the essential-elements jury instruction was erroneous because it incorporated both reckless and intentional child abuse despite Defendant having been accused only of the former offense. *See State v. Davis*, 2009-NMCA-067, ¶¶ 8-9, 146 N.M. 550, 212 P.3d 438 (holding that the district court erred in instructing the jury on intentional child abuse and what is now reckless child abuse when the defendant was only charged with intentional child abuse and that a defendant

---

[2]At the time of Defendant's conviction, UJI 14-604 NMRA (2012) was the governing jury instruction for intentionally or negligently caused child abuse not resulting in death or great bodily harm. The Supreme Court has since withdrawn this instruction and adopted UJI 14-612 NMRA in its stead. This change affects our analysis only as explained herein.

4

is entitled to be on notice of the crimes with which he is charged and "to be tried solely on those charges"), *abrogated on other grounds by State v. Montoya*, 2015-NMSC-010, 345 P.3d 1056. However, the State argues that we should nevertheless affirm.

{7}     The parties agree that the issue was not preserved in district court. Given Defendant's failure to timely object, he asks that we conclude that the instructional error was fundamental, pursuant to Rule 12-216(B)(2) NMRA (permitting appellate review, in the court's discretion, of unpreserved issues in cases involving fundamental error). When the issue presented on appeal has not been preserved in district court, we review only for fundamental error. *Id*. In the context of an erroneous "essential-elements jury instruction," we must determine whether the flawed instruction "create[d] confusion in the jury that would undermine the reliability of the verdict and the integrity of our judicial system." *State v. Barber*, 2004-NMSC-019, ¶ 32, 135 N.M. 621, 92 P.3d 633. Reversible fundamental error also occurs "when a jury instruction fails to include an essential element of an offense or a defense to a charge, leaving the question of guilt so doubtful that it would shock the conscience to permit the verdict to stand." *State v. Sosa*, 1997-NMSC-032, ¶ 24, 123 N.M. 564, 943 P.2d 1017; *see Barber*, 2004-NMSC-019, ¶ 17 (stating that fundamental error occurs in cases with "defendants who are indisputably innocent" or in which "a mistake in the

process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused"). Once error is established, our obligation is "to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 19 quoting *State v. Benally*, 2001-NMSC-033, ¶ 24 131 N.M. 258, 34 P.3d 1134 (Baca, J., dissenting)).

**{8}** Defendant contends that fundamental error occurred because: (1) the instruction confused the jury; (2) the instruction required Defendant to defend against a charge of intentional child abuse for which he was never notified, rendering his conviction for reckless child abuse a miscarriage of justice; and (3) the instruction rendered the jury's verdict non-unanimous. The State argues that the error was not fundamental because Defendant is neither indisputably innocent nor was the conviction fundamentally unfair. The State points out that Defendant offered no evidence contradicting the testimony of either Mother or A.C., and "[t]here is no question that Defendant [was in] . . . a heated argument with [Mother], and that she was holding T.T.[,]" resulting in the jury's conclusion that T.T. had been endangered by Defendant. Further, the State posits that the conviction was not fundamentally unfair as the penalty is the same for either intentional or reckless child abuse and there was only one theory of liability that arose from Defendant's aggressive physical contact

with Mother while she was holding T.T.

{9} Regarding his first and second contentions, Defendant relies on *Davis* and *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705, to argue that by erroneously instructing the jury as to both crimes, the district court misled and confused the jury and simultaneously deprived him of notice of the need to defend against the crime of intentional child abuse. He also cites our Supreme Court's recent opinion *Consaul*, 2014-NMSC-030, to assert that the element instruction failed to "require[] the State to prove the requisite mens rea for the specific type of child abuse charged."

{10} We begin with *Consaul*, which clarified the inapplicability of a merely negligent act to conduct proscribed by Section 30-6-1. *Consaul*, 2014-NMSC-030, ¶ 37. In defining the heightened recklessness mens rea as that required to support conviction for non-intentional child abuse, *Consaul* stated that a defendant must "consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe." *Id*. Defendant maintains that, while *Consaul* did not specifically address the level of culpability the State must prove for an intentional child abuse conviction, "a defendant should have to, at the very least, *intend* a substantial and unjustifiable risk of harm *to the child*." He correctly asserts that

7

because the State failed to prove "conscious wrongdoing[,]" the jury should not have been permitted to consider intentional child abuse.

{11}     Although correct that our Supreme Court clarified the element of intent necessary to convict a defendant of non-intentional child abuse in *Consaul*, 2014-NMSC-030, ¶¶ 37-38, Defendant fails to address notable legal and factual differences between *Consaul* and this case. In *Consaul*, the state charged the defendant with *both* intentional and reckless child abuse and proceeded on two separate theories of how an infant's death occurred, one intentional and one reckless. 2014-NMSC-030, ¶¶ 1, 13-14. The jury then issued a general verdict, not specifying whether it found the defendant guilty of intentional or reckless child abuse, yet the district court "sentenced [the defendant] to the basic term of [eighteen] years imprisonment" based on its classification of the crime as a "serious violent offense." *Id.* ¶ 17. Here, the State proceeded on the single theory of reckless child abuse, the jury was correctly instructed as to the element of recklessness and not negligence, and Defendant was subsequently sentenced for reckless child abuse. Unlike the defendant in *Consaul*, Defendant could not have been convicted of a lesser offense than that for which he was charged or sentenced nor could he have been convicted based upon a mens rea less than that statutorily required. *Consaul* does not support Defendant's contention that the instructional error was fundamental and warrants reversal.

**{12}** Similarly, the case before us is distinguishable from *Davis*. Factually, the *Davis* "jury was presented with conflicting testimony as to how [the c]hild's injuries occurred": whether they were intentionally caused by the defendant or recklessly caused when the child was left alone with a dog. 2009-NMCA-067, ¶ 11. Here, there was but a single theory on which the child abuse charge was based: Defendant's recklessly aggressive movement toward and contacting Mother's head, witnessed by A.C., and Mother's testimony to having been struck and forced backward while holding T.T. Also noteworthy is the fact that while the jury verdict form did not specify whether Defendant was guilty of intentional or reckless child abuse, Defendant was ultimately sentenced only upon reckless child abuse, the crime carrying lesser penalties and the lesser mens rea requirement. This is unlike *Davis*, where the jury was allowed to convict the defendant for a crime containing a heightened mens rea pursuant to an instruction requiring only a lesser degree of intent. *Id.* ¶¶ 1, 5. Here, Defendant was charged with and sentenced based upon only the lesser mens rea crime; his conviction therefore fails to qualify as the miscarriage of justice that was the possibility in *Davis*. *See id.* ¶ 16. While Defendant correctly identifies instructional error regarding the element of intent, the circumstances of *Davis* do not contribute to a conclusion that the instructional error was fundamental to a degree that necessitates reversal under the facts of this case. *See Cabezuela,* 2011-

NMSC-041, ¶ 33 (concluding that "the Legislature did not intend to lump within intentional child abuse other forms of abuse committed with a lesser degree of intent" (alteration, internal quotation marks, and citation omitted)).

**{13}** Lastly, *Cabezuela* precludes conviction for child abuse by endangerment based upon mere negligence alone. *See id.* ¶¶ 36-37. But Defendant has no argument that he was convicted on grounds of negligence because the jury was instructed only as to recklessness—the correct mens rea for the non-intentional iteration of the crime with which Defendant was charged.

**{14}** We conclude, in the context of the individual facts and circumstances of this case, that the erroneous essential-elements instruction did not generate jury confusion such that would render Defendant's conviction a miscarriage of justice. *See Barber*, 2004-NMSC-019, ¶ 32. Nor do the circumstances demonstrate Defendant's indisputable innocence. *See State v. Rodriguez*, 1970-NMSC-073, ¶ 10, 81 N.M. 503, 469 P.2d 148 ("The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand."). Rather, the jury was properly provided the lesser mens rea instruction—recklessness—necessary to sustain a conviction for non-intentional child abuse.

{15} Defendant maintains in this third contention that, as instructed, it is impossible to know if the jury reached a unanimous verdict as the instruction given did not require the jurors to agree on the required mens rea. Citing *State v. Salazar*, 1997-NMSC-044, ¶ 39, 123 N.M. 778, 945 P.2d 996 ("[Caselaw] clearly demonstrates that a unanimous verdict on the crime charged is required for conviction in a criminal case."), Defendant generally argues that the erroneous provision of two mens rea elements "effectively permitted jurors to convict [Defendant] without unamity." In this regard also, Defendant again compares his case to *Davis* where the defendant was charged only with intentional child abuse, but the jury was wrongly instructed on both intentional and what is now reckless child abuse, allowing the possibility that the defendant could have been convicted of intentional abuse with only a reckless mens rea. 2009-NMCA-067, ¶¶ 1, 5-6. But *Davis* does not address juror unanimity, and Defendant offers no specific authority for the proposition that when an erroneous instruction contains a wrongly heightened mens rea, along with the correct mens rea, that the ensuing conviction cannot stand due to the requirement of unanimity. Where a party cites no authority to support an argument, we may assume no such authority exists. *See State v. Godoy*, 2012-NMCA-084, ¶ 5, 284 P.3d 410 (noting Defendant's failure to provide authority in rejecting the proposition that juror unanimity required reliance on the same evidence when evaluating greater and lesser offenses). In any

event, *Salazar* states that "a jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury." 1997-NMSC-044, ¶ 32. *See also State v. Cavanaugh*, 1993-NMCA-152, ¶ 14, 116 N.M. 826, 867 P.2d 1208 (stating that "[t]he fact that a jury instruction is given in the alternative does not mean that a guilty verdict reached by that jury is non-unanimous" and that "[a] guilty verdict on such an instruction will be upheld" where a jury is instructed of the requirement regarding and indicates the unanimity of its verdict).

{16}    Again, however, what authority is provided by Defendant disallows a conclusion of fundamental error. Defendant was charged with reckless child abuse, of which he was convicted unanimously upon evidence offered by the State's lone theory that he was guilty of reckless child abuse. The instructional error did not generate the possibility of wrongful conviction under any of the cases relied upon by Defendant, as it did not provide the jury with a lesser than required basis for conviction. Rather, had the jury found that Defendant acted intentionally and not recklessly, the State's burden would have been improperly increased for the crime with which Defendant was charged. While we remain cognizant that intentional and reckless child abuse are separate and distinct crimes, we conclude that the unanimity required for Defendant's conviction to be valid was not imperilled by the faulty

instruction such that the error was fundamental or that his conviction could be deemed fundamentally unfair or a miscarriage of justice. *See Barber*, 2004-NMSC-019, ¶ 19.

**II.     Sufficiency of the Evidence**

{17}     Defendant contends that the State failed to present sufficient evidence at trial to meet the burden of proving each element of child abuse by endangerment beyond a reasonable doubt. He maintains that "[w]ithout evidence that [Mother] lost control of [T.T] at any point, the State never identified any direct harm [T.T.] may have suffered, and relied instead on the assumption that if [Mother] was battered then [T.T.] would undoubtedly be harmed as well." Defendant asserts that a danger that is merely potential is one too remote to sustain a conviction and the "alleged head[]butt was not an act that created a substantial and foreseeable risk of harm as required by New Mexico law." (Internal quotation marks omitted.)

{18}     In reviewing a challenge of sufficiency of the evidence, we apply a substantial evidence standard of review. *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Trujillo*, 2002-NMCA-100, ¶ 8, 132 N.M. 649, 53 P.3d 909 (internal quotation marks and citation omitted). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Chavez*, 2009-NMSC-035, ¶ 11. (alteration, internal quotation marks, and citation omitted). We indulge all reasonable inferences and resolve all conflicts in the evidence to favor the guilty verdict. *Id*. As long as there is sufficient evidence supporting the verdict, we do not reweigh the evidence or substitute our judgment for that of the factfinder. *Id*.

**{19}** "Child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, even though the child does not suffer a physical injury." *Id*. ¶ 15 (emphasis, internal quotation marks, and citation omitted). At the time of the incident, the elements of child abuse by endangerment consisted of: (1) causing a child to be placed in a situation that endangered the life or health of the child, and (2) acting intentionally or with reckless disregard and without justification. UJI 14-604 (2012). In order to find that a defendant acted with reckless disregard, a jury must find that the defendant "knew or should have known [his or her] conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of" the child. UJI 14-604(2) (2012). A substantial and foreseeable risk is a situation in which the defendant "placed a child within the zone of danger and physically close to an inherently dangerous situation." *Chavez*, 2009-NMSC-035, ¶

14

26 (alteration, internal quotation marks, and citation omitted); *State v. Gonzales*, 2011-NMCA-081, ¶ 18, 150 N.M. 494, 263 P.3d 271.

**{20}** In *Consaul*, our Supreme Court expressed doubt "about the continued vitality of the 'knew or should have known' " portion of the definition of negligently in Section 30-6-1(A)(3), as "the Legislature appeared to capture two standards of mens rea in one sentence when it defined 'negligently' as meaning that 'a person knew or should have known the danger involved and acted with a reckless disregard of the safety or health of the child.' " *Consaul*, 2014-NMSC-030, ¶¶ 39-40 (emphasis omitted). As a result, the reckless child abuse jury instruction has since been modified. *See* UJI 14-612. However, in addressing the reckless child abuse instruction as it was written, containing the questionable "knew or should have known" language as was present here, the Supreme Court instructed that remand for a new trial depends on whether the evidence at trial was sufficient to support the conviction. *Consaul*, 2014-NMSC-030, ¶ 41. We therefore examine the evidence presented by the State at trial.

**{21}** In this case, both Mother and A.C. testified to an altercation between Mother and Defendant. While the facts surrounding the purported headbutt differed within the testimony of the two witnesses, both agreed that Mother was holding T.T., Defendant became angry, and he made head-to-head contact with Mother to a degree that effectuated her forced backward movement. Defendant compares his conduct to that

in *Trujillo*, wherein the defendant was charged with child abuse under the theory of endangerment based on an incident in which the defendant beat the child's mother while the child was merely present and where the defendant ordered the child to leave the room. 2002-NMCA-100, ¶¶ 4, 5, 7. This Court determined that based on those circumstances there was insufficient evidence to support the child abuse conviction. *Id.* ¶ 20. In our view, Defendant's conduct here and that of the defendant in *Trujillo* are not similar because T.T. was directly endangered by, and was not in a separate location apart from, the actions of Defendant.

{22}    This case is more analogous to *State v. Ungarten*, 1993-NMCA-073, 115 N.M. 607, 856 P.2d 569, and *State v. McGruder*, 1997-NMSC-023, 123 N.M. 302, 940 P.2d 150, both which were *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891. In *Ungarten*, the defendant was convicted of child abuse after an altercation with a child and the child's family where the defendant waved and thrust a knife in their direction. 1993-NMCA-073, ¶¶ 5, 12. This Court concluded in *Ungarten* that the defendant's claim that there was not substantial evidence to support the child abuse charge was without merit. *Id.* ¶ 13. Similarly, in *McGruder*, the defendant was charged with child abuse by endangerment after fatally shooting the mother's boyfriend and threatening to shoot the mother while the child was standing behind her. 1997-NMSC-023, ¶¶ 5-7, 37-38. The Supreme Court

16

determined that based on this conduct, there was substantial evidence to support the child abuse conviction. *Id*. ¶¶ 38-39.

**{23}** We acknowledge that the standard by which our courts measure child abuse by endangerment has been modified subsequent to both *Trujillo* and *Ungarten*, evolving from a "reasonable probability or possibility that the child will be endangered[,]" *Ungarten*, 1993-NMCA-073 ¶ 11 (internal quotation marks and citation omitted), to a "substantial and foreseeable risk of harm[,]" *Chavez*. 2009-NMSC-035, ¶ 22 (emphasis omitted), to now a "substantial and unjustifiable risk of serious harm." UJI 14-612(3); *see Consaul*, 2014-NMSC-030, ¶ 37. Yet the holdings of these cases are still sound as shown by our Supreme Court's reliance on them as examples of cases where "the seriousness of the threatened injury has . . . been apparent." *Chavez*, 2009-NMSC-035, ¶ 24. We conclude this also to be one such case.

**{24}** Unlike *Trujillo*, where the child merely witnessed a portion of an attack on the mother and was absent for the remainder of the attack, here T.T. was not only present for the entirety of the altercation due to his dependence on Mother, but he was situated in the very midst of the aggression, between his parents. *See McGruder*, 1997-NMSC-023, ¶¶ 38-39 (affirming a child abuse conviction where the child was *behind* the mother while the defendant threatened the mother). It is clear from this set of circumstances that Defendant caused T.T. to be placed "within the zone of danger and

17

physically close to an inherently dangerous situation." *Gonzales*, 2011-NMCA-081, ¶ 18 (internal quotation marks and citation omitted). Because we view the evidence in the light most favorable to the verdict, based on the evidence presented, "[t]he jury was entitled to view such conduct as endangering either the life or health of the child." *McGruder*, 1997-NMSC-023, ¶ 38.

### III. Validity of Child Abuse Conviction

**{25}** Finally, Defendant argues that because he was acquitted of having battered Mother, the charge set forth in Count 3 that arose from the same conduct as the reckless child abuse charge, his conviction for Count 2 is inconsistent and should be reversed. Defendant cites no authority for this proposition and argues only that by having been determined not to have battered Mother, Defendant could not have recklessly endangered T.T. He maintains the differing verdicts are "so contrary to each other that the basis upon which each was reached cannot be determined[.]" Defendant concedes that this issue was not preserved and asks again that we review for fundamental error pursuant to Rule 12-216(B)(2).

**{26}** "Inconsistent verdicts are those which are so contrary to each other that the basis upon which each verdict was reached cannot be determined." *Fernandez*, 1994-NMCA-056, ¶ 38. However, "we review the verdict of conviction, not the verdict of acquittal." *Id*. ¶ 39; *see State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d

18

133 ("We have frequently said that our business is to review the verdicts of conviction, and not concern ourselves with any alleged acquittals, and thus we do not entertain contentions alleging that the verdicts are irreconcilable."). Therefore, even if the acquittal on the battery charge was irreconcilable with the child abuse conviction, we would not be required to reverse the conviction. *See id.* And as we have discussed, there is sufficient evidence to support that conviction. By looking to the conduct for which Defendant was convicted, and not reaching to incorporate that for which he was acquitted, our analysis again compels the conclusion that Defendant's conviction was not premised upon fundamental error.

**CONCLUSION**

{27}     For the forgoing reasons, we affirm Defendant's conviction for reckless child abuse, as charged in Count 2.

{28}     **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**