This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37025**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARLOS ALFREDO PEREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina T. Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**M. ZAMORA, Judge.**

**{1}** Defendant was convicted of second-degree murder and battery on a household member. On appeal, he challenges the sufficiency of the evidence to support his conviction for second-degree murder, contending that the State failed to disprove his claim of sufficient provocation. Defendant also asserts that his convictions violate double jeopardy. We conclude that the evidence was sufficient to support the jury's verdict. However, we agree that the convictions violate double jeopardy. We therefore

affirm in part, reverse in part, and remand for entry of an amended judgment and sentence.

## BACKGROUND

**{2}**    On the morning of June 7, 2016, officers with the Albuquerque Police Department were dispatched to Defendant's residence, where they found Vanessa Delgado (Victim), dead. Defendant subsequently confessed to strangling her, and then fleeing with the couple's four children.

## DISCUSSION

### A.    Sufficiency of the Evidence

**{3}**    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). In applying this standard, an appellate court "review[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Nor will this Court "evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted).

**{4}**    In order to support a conviction for second-degree murder in this case, the State was required to prove that: (1) Defendant killed Victim; (2) Defendant knew that his acts created a strong probability of death or great bodily harm; (3) Defendant did not act as a result of sufficient provocation; and (4) this happened in New Mexico on or about the 7th day of June, 2016. *See* NMSA 1978, § 30-2-1(B) (1994) (defining second-degree murder); UJI 14-210 NMRA (describing the elements of second-degree murder). *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."(alterations, internal quotation marks, and citation omitted)). Only the third element, absence of provocation, is in dispute. We limit the scope of discussion accordingly.

**{5}**    Mitigation of a homicide from second-degree murder to voluntary manslaughter requires legally sufficient "provocation," defined in our Uniform Jury Instructions and case law as "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions" that would "cause a temporary loss of self[-]control in an ordinary person." UJI 14-222 NMRA; *see State v. Jeringan*,

2006-NMSC-003, ¶ 18, 139 N.M. 1, 127 P.3d 537 (stating that "voluntary manslaughter is second-degree murder without sufficient provocation"). "The 'provocation' is not sufficient if an ordinary person would have cooled off before acting." UJI 14-222 NMRA; *see State v. Stills*, 1998-NMSC-009, ¶ 36, 125 N.M. 66, 957 P.2d 51 (discussing sufficient provocation). "[W]hat constitutes sufficient cooling time depends upon the nature of the provocation and the facts of each case and is a question for the jury." *State v. Reynolds*, 1982-NMSC-091, ¶ 10, 98 N.M. 527, 650 P.2d 811 (citation omitted).

**{6}** In support of his claim of sufficient provocation at trial, Defendant explained that he was chronically sleep-deprived, he had recently discovered that Victim was having an affair, and he had confronted her about it on the evening of her death. Defendant stated that he had expected Victim to express remorse, but instead she had bragged about her conduct, insulted him, and refused to drop the subject, causing him to "snap."

**{7}** To the extent that Defendant suggests that he established provocation as a matter of law, we disagree. The jury did not have to believe Defendant's testimony about the events immediately preceding his strangulation of Victim. *See State v. Hunter*, 2001-NMCA-078, ¶ 16, 131 N.M. 76, 33 P.3d 296 (explaining that the jury is not required to believe defense theories); *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071 (observing that the jury is not obligated to believe the defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt the defendant's version of events). Moreover, the jury was at liberty to conclude that the situation was not sufficiently provoking to cause an ordinary person to lose self-control. *See Sells v. State*, 1982-NMSC-125, ¶ 8, 98 N.M. 786, 653 P.2d 162 ("Generally, it is for the jury to determine whether there is sufficient provocation under an appropriate instruction on voluntary manslaughter."); *Hunter*, 2001-NMCA-078, ¶ 16 (explaining that it is for the jury to determine whether the defendant was provoked in such a way that an ordinary person would have reacted as he or she did).

**{8}** Alternatively, Defendant appears to invite this Court to view the evidence in the light most favorable to himself. However, this "is contrary to the manner in which it must be viewed on appeal." *State v. Herrera*, 2014-NMCA-007, ¶ 30, 315 P.3d 343. The fact that the evidence might have been capable of supporting a different result is essentially immaterial. *See generally In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 ("The question is whether the [conviction] is supported by substantial evidence, not whether the [fact finder] could have reached a different conclusion.").

**{9}** Viewing the evidence and inferences that may reasonably be derived therefrom in the light most favorable to the verdict, as we must, it is noteworthy that Defendant had given a statement indicating that he became aware of Victim's affair days before the homicide occurred. Although Defendant claimed to have learned additional details of the affair on that day, he further indicated that he deliberately delayed confronting her until after they had gone grocery shopping, he had taken a shower, and watched some television. The jury could readily have determined that an ordinary person would have cooled off in this period, particularly in light of Defendant's own infidelity. *See Sells*, 1982-NMSC-125, ¶ 5 ("The provocation must concur with sudden anger or heat of

passion and an ordinary person would not have cooled off before acting."); *Reynolds*, 1982-NMSC-091, ¶ 10 ("What constitutes sufficient cooling time depends upon the nature of the provocation and the facts of each case and is a question for the jury." (citation omitted)); *cf. State v. Phillips*, 2000-NMCA-028, ¶ 14, 128 N.M. 777, 999 P.2d 421 (observing that juries may "use their common sense to look through testimony and draw inferences from all the surrounding circumstances" (internal quotation marks and citation omitted)). Similarly, the jury was at liberty to determine that further developments in the course of any conversation or argument that may have preceded the homicide were not sufficiently provoking to cause loss of self-control. *See State v. Taylor*, 2000-NMCA-072, ¶ 28, 129 N.M. 376, 8 P.3d 863 ("The question of whether the circumstances rose to the level of provocation to reduce second[-] degree murder to voluntary manslaughter [is] for the fact[-]finder to resolve[.]"). We see no basis for second-guessing the jury's assessment of the evidence and therefore uphold Defendant's conviction for second-degree murder.

## B. Double Jeopardy

**{10}** Defendant argues that his convictions for second-degree murder and battery on a household member violate the prohibition against double jeopardy. The State agrees. Because we are not bound by the State's concession, *see State v. Foster*, 1999-NMSC-007, ¶ 25, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683, we briefly address the merits as follows.

**{11}** The right to be free from double jeopardy protects, in relevant part, "against multiple punishments for the same offense." *State v. Montoya*, 2011-NMCA-074, ¶ 29, 150 N.M. 415, 259 P.3d 820 (internal quotation marks and citation omitted). The specific type of multiple punishment case we are dealing with here is categorized as a double description case, which prohibits charging a defendant with violations of multiple statutes for the same conduct in violation of the Legislature's intent. *See State v. Lozoya*, 2017-NMCA-052, ¶ 9, 399 P.3d 410. In such a case, double jeopardy bars a conviction if the underlying conduct is unitary, and if the Legislature has not indicated an intent to punish the same conduct separately. *Id.*

**{12}** In order to determine whether the convictions are premised upon unitary conduct, we commonly look to the jury instructions. *See State v. Swick*, 2012-NMSC-018, ¶ 21, 279 P.3d 747. In this case, both the second-degree murder elements instruction and the battery elements instruction essentially included strangulation of Victim. **[RP 149, 155]** Although alternatives to strangulation were also incorporated in the battery instruction, there is nothing on the record before us to reflect that the jury relied upon any of those alternatives. Under the circumstances, we must presume unitary conduct. *See Foster*, 1999-NMSC-007, ¶ 28 ("[W]e must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative.").

**{13}** Turning to the question of legislative intent, we note that although each offense contains elements that the other does not, this is not determinative. *See State v. Montoya*, 2013-NMSC-020, ¶¶ 29, 32, 306 P.3d 426. If two statutes were designed to protect the same social interest, "the inference becomes strong that the function of the . . . statutes is only to allow alternative means of prosecution." *Id.* ¶ 32 (internal quotation marks and citation omitted). The statutes at issue in this case were both enacted to protect against personal injury. *See State v. Torres*, 2018-NMSC-013, ¶ 26, 413 P.3d 467 ("[T]he Legislature also enacted the murder statute to deter intentional infliction of serious personal injury."); *State v. Roper*, 2001-NMCA-093, ¶ 12, 131 N.M. 189, 34 P.3d 133 (stating that "the harm protected by the battery statutes [is] physical harm, i.e., physical injury to persons"). Because both statutes are directed at punishing the same social evil, we conclude that the Legislature did not intend to subject Defendant to multiple punishments for the strangulation of a single victim. *Cf. Swick*, 2012-NMSC-018, ¶ 29 (holding that because both the attempted murder and the aggravated battery statutes "address the social evil of harmful attacks on a person's physical safety and integrity[,]" convictions of both violate double jeopardy).

**{14}** "When double jeopardy protections require one of two otherwise valid convictions to be vacated, we vacate the conviction carrying the shorter sentence." *Torres*, 2018-NMSC-013, ¶ 28. Because second-degree murder carries the more lengthy sentence, *see* NMSA 1978, § 31-18-15(A)(4) (2016, amended 2019), we vacate Defendant's conviction for battery on a household member.

**CONCLUSION**

**{15}** For the foregoing reasons we affirm Defendant's conviction for second-degree murder, we reverse Defendant's conviction for battery on a household member, and we remand to district court for entry of an amended judgment and sentence in accordance with this opinion.

**{16}   IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**