This memorandum opinion was not selected for publication in the New Mexico Appellate Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                    **A-1-CA-35964**

**RYAN BEGAY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Caren I. Friedman
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GALLEGOS, Judge Pro Tempore.**

{1}     Following a jury trial, Ryan Begay (Defendant) was convicted of one count of child abuse (recklessly caused, great bodily harm); two counts of child abuse (recklessly caused, no death or great bodily harm); one count of shooting at or

from a motor vehicle (great bodily harm); one count of shooting at or from a motor vehicle (no injury); and one count of tampering with evidence. Defendant appeals his convictions, raising six issues: (1) sufficiency of the evidence to support the child abuse convictions, including whether the victim's injury amounted to great bodily harm; (2) denial of due process of law; (3) double jeopardy; (4) inconsistent verdicts; (5) error in striking a juror for cause; and (6) ineffective assistance of counsel.

**{2}** We conclude that Defendant's convictions for two counts of child abuse (recklessly caused, no death or great bodily harm) violate double jeopardy and we remand, directing the district court to vacate one of the two counts of child abuse (recklessly caused, no death or great bodily harm). Unpersuaded by the balance of Defendant's appellate arguments, we otherwise affirm.

**BACKGROUND**

**{3}** At approximately 11:00 a.m. on June 26, 2013, Defendant and his girlfriend, Sabra Montoya, along with Sabra's sister, Samantha, went to an apartment complex in Albuquerque to purchase heroin. Defendant apparently obtained some heroin and "shot up" in the apartment complex parking lot. Sabra's cousin, Trey Gomez, who lived in the complex, came outside and confronted Defendant in the parking lot. Following an intense argument with Trey, Defendant, Sabra, and Samantha began to drive away, with Sabra driving the vehicle, Defendant riding as

the front passenger, and Samantha sitting in the back seat. They heard noises, which they purportedly believed to be shots fired at them—later determined to be rocks being thrown—coming from Trey's direction. Defendant then balanced himself out of the passenger window and fired several gunshots over the roof of the vehicle in Trey's direction. Several adults and three children (J.A., Ma.G. and Me.G.,) had been in the parking lot along with Trey during the confrontation, and one of the little girls, twenty-month-old J.A., was shot in her leg. Defendant, Sabra, and Samantha drove off, and Defendant later threw the gun in the Rio Grande River.

{4}     Defendant was charged with—and tried for—fifteen different crimes, fourteen of which were related to the shooting, with the last charge being tampering with evidence. The jury was instructed on self-defense for all of the shooting related counts. Following his trial, Defendant was ultimately convicted for six of the charges. He now appeals. We consider his appellate issues in turn.

**DISCUSSION**

**I.     Sufficiency of the Evidence**

**A.     Standard of Review**

{5}     The first issue on appeal is whether there was sufficient evidence to support Defendant's child abuse convictions, including whether J.A.'s injury amounted to great bodily harm. In assessing the sufficiency of the evidence, the reviewing court

"view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In criminal cases, "[t]he test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We "will not second-guess the jury's decision concerning the credibility of witnesses, reweigh the evidence, or substitute [our] judgment for that of the jury. So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, [the appellate c]ourt will not upset a jury's conclusions." *State v. Ramirez*, 2018-NMSC-003, ¶ 6, 409 P.3d 902 (alteration, emphasis, internal quotation marks, and citations omitted).

**B. The Evidence Presented Was Sufficient to Support Defendant's Convictions for Child Abuse**

{6} Defendant contends that his convictions for child abuse were not supported by sufficient evidence. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-

4

089, ¶ 7, 104 N.M. 729, 726 P.2d 883. With respect to the charge of child abuse resulting in great bodily harm, the jury here was instructed as follows:

> For you to find [Defendant] guilty of child abuse resulting in great bodily harm, as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [Defendant] shot [J.A.];
>
> 2. By engaging in the conduct described in Paragraph 1, [Defendant] caused [J.A.] to be placed in a situation that endangered the life or health of [J.A.];
>
> 3. [Defendant] showed a reckless disregard without justification for the safety or health of [J.A.]. To find that [Defendant] showed a reckless disregard, you must find that [Defendant]'s conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [J.A.]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [J.A.].
>
> 4. [Defendant]'s conduct resulted in great bodily harm to [J.A.];
>
> 5. . . . Defendant did not act in self-defense;
>
> 6. [J.A.] was under the age of eighteen (18);
>
> 7. This happened in New Mexico on or about the 26th day of June, 2013.

{7} With respect to the first charge of child abuse not resulting in great bodily harm, the jury was instructed as follows:

For you to find [Defendant] guilty of child abuse, as charged in Count 2, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [Defendant] shot a firearm in the presence of [Ma.G.];

2. By engaging in the conduct described in Paragraph 1, [Defendant] caused [Ma.G.] to be placed in a situation that endangered the life or health of [Ma.G.];

3. [Defendant] showed a reckless disregard without justification for the safety or health of [Ma.G.]. To find that [Defendant] showed a reckless disregard, you must find that [Defendant]'s conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [Ma.G.]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [Ma.G.];

4. . . . [D]efendant did not act in self-defense;

5. [Ma.G.] was under the age of eighteen (18);

6. This happened in New Mexico on or about the 26th day of June, 2013.

The jury was instructed likewise with regard to the charge of child abuse without bodily injury of Me.G.

{8} Defendant's sufficiency argument is premised almost entirely on his assertion that the "State presented no evidence that [Defendant] was aware that children were present during Trey's attack." Along the same lines, Defendant argues that there is not sufficient proof of mens rea "[w]here a defendant is

6

cognizant that he might injure a member of the public and a child is incidentally affected[.]"

{9} The Legislature defined child abuse, in pertinent part, as "knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" NMSA 1978, § 30-6-1(D)(1) (2009). "Section 30-6-1(D)(1) encompasses abuse by endangerment that results in physical or emotional injury as well as those circumstances where the abused child suffers no injury of any kind at all." *Ramirez*, 2018-NMSC-003, ¶ 50.

{10} In *State v. Consaul*, 2014-NMSC-030, ¶¶ 37-40, 332 P.3d 850, our Supreme Court clarified that the proper standard for the lowest level of child abuse under Section 30-6-1(D) is "recklessness" and that juries should no longer be instructed on "negligent" child abuse. The standard for determining child abuse has evolved from a "reasonable probability or possibility that the child will be endangered[,]" *State v. Ungarten*, 1993-NMCA-073, ¶ 11, 115 N.M. 607, 856 P.2d 569 (internal quotation marks and citation omitted), *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, ¶ 22, 146 N.M. 434, 211 P.3d 891, to a "substantial and foreseeable risk of harm[,]" *Chavez,* 2009-NMSC-035, ¶ 22, (emphasis, internal quotation marks, and citation omitted), and now to its present formulation, a

7

"substantial and unjustifiable risk of [serious harm]." *Consaul*, 2014-NMSC-030, ¶ 37; *see* UJI 14-612(3) NMRA.

{11} "[T]he punishment for child abuse resulting in great bodily harm, whether done knowingly, intentionally, negligently, or recklessly, is the same." *Consaul*, 2014-NMSC-030, ¶ 23 (emphasis omitted). When the abuse does not result in the death of a child under twelve, it is unnecessary to specify a particular mens rea so long as the State proves that "the defendant acted knowingly, intentionally or recklessly" *Montoya*, 2015-NMSC-010, ¶ 33 (alteration, emphasis, internal quotation marks, and citation omitted).

{12} However, "for a defendant to be criminally liable for child abuse by endangerment, he or she must be aware of a particular danger to the identifiable child or children when engaging in the conduct that creates the risk of harm." *State v. Gonzales*, 2011-NMCA-081, ¶ 1, 150 N.M. 494, 263 P.3d 271, *aff'd on other grounds*, 2013-NMSC-016, ¶ 1, 301 P.3d 380. In *Gonzales*, the defendant drove while severely intoxicated and rear-ended another vehicle in which two children were riding, killing one child and injuring the other. *Id.* ¶ 4. The defendant was convicted of two counts of child abuse by endangerment. *Id.* ¶ 4 n.1. This Court reversed and remanded, holding that "a discernable risk of danger to a particular child or particular children is required to support a conviction for negligent child abuse by endangerment[.]" *Id.* ¶ 1.

8

{13} In *Ramirez*, our Supreme Court addressed a similar situation where the defendant asserted that there was insufficient evidence to support his child abuse convictions because "none of the three children were physically harmed in any way" and "there was no evidence to support that [he] intended to harm any of the children." 2018-NMSC-003, ¶ 17 (alteration and internal quotation marks omitted.) The Supreme Court held that there was sufficient evidence of child abuse when

> [t]he jury heard evidence that [the defendant] fired a gun at [the victim] nine times at point-blank range, that [the victim] was seated in the front passenger seat of the Durango, and that the children were sitting in the back seats of the Durango in immediate proximity to [the victim]. The jury also learned that, although [the victim] was shot nine times, only five of the bullets were found inside of his body. Several of the bullets [the defendant] fired traveled through [the victim] and continued onward. One of those bullets traveled through the driver's-side window in the second row of seats of the Durango and another bullet was recovered from the headliner or inside roof of the Durango.

*Id.* ¶ 18. The Court concluded that "[f]rom this evidence, the jury could reasonably infer that it was sheer luck that the children were not struck by one of the bullets [the defendant] fired at [the victim]" and held that "the evidence presented is sufficient to support the jury's determination that [the defendant] placed the three children in a situation that endangered their lives and that [the defendant] showed a reckless disregard for their safety and health." *Id.*

{14} In the present case, the jury heard evidence that Trey's youngest children lived with him in apartment 8 and that as Trey walked out of his apartment to confront Defendant, his two youngest daughters, Me.G, age 4 or 5, and Ma.G., age

9

5 or 6, followed him out. Trey's twenty-month-old niece J.A., who lived with her father in the apartment complex, was also outside. There was evidence presented that Trey was probably within arm's reach of Defendant during their argument, and that the three children, Me.G., Ma.G., and J.A., were outside in the parking lot during the events leading up to the shooting. When Defendant fired shots toward Trey, one of which ultimately struck J.A., Me.G. and Ma.G. were standing right next to her.

{15} Viewing the evidence in the light most favorable to the guilty verdicts, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, *Cunningham*, 2000-NMSC-009, ¶ 26, we conclude that a reasonable juror could have found that Defendant was aware that the children were outside the apartment building in the parking lot near Trey—in the zone of danger—when Defendant fired his gun multiple times in Trey's direction. *See State v. Glascock*, 2008-NMCA-006, ¶ 29, 143 N.M. 328, 176 P.3d 317 (recognizing that direct evidence of knowledge is rarely available and is almost always inferred from other facts in the case). While we acknowledge Defendant's contrary argument at trial, based upon his statement to police, and his contention on appeal that he was not aware that the children were present in the parking lot, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal

because the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19.

**{16}** Consequently, we determine that in light of the direct and circumstantial evidence presented at trial, the jury could have found, beyond a reasonable doubt, that Defendant placed the three identifiable children in a situation that constituted a substantial and unjustifiable risk of serious harm by shooting a gun multiple times in their direction, and that in doing so he showed a reckless disregard for their safety and health.

**B.    There Was Sufficient Evidence of Great Bodily Harm**

**{17}** Defendant also argues that there was insufficient evidence that J.A. suffered great bodily harm. "Great bodily harm" was defined in the jury instructions as "an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body." *Accord* UJI 14-131 NMRA. Defendant's contention is that the gunshot wound suffered by J.A. fails to meet any of these definitions.

**{18}** " 'Prolonged impairment' is not a technical term." *State v. Cordova*, 2016-NMCA-019, ¶ 19, 366 P.3d 270. "Prolonged impairment, like protracted impairment, means a lengthy or unusually long time under the circumstances." *Id.* (internal quotation marks and citation omitted). It is the province of the jury to

11

determine whether the impairment was for a sufficiently extended period of time to meet this definition. *Id.* In *Cordova*, there was sufficient evidence of great bodily harm where the victim testified at trial that she experienced bruised ribs, severe bruising, and road rash that covered her right side. *Id.* ¶ 18. She testified that she was unable to work for approximately one month and was largely unable to move for the first two weeks. *Id.* ¶ 18. The victim further testified that she still experienced pain from her bruised ribs. *Id.* This Court held that the jury could determine that the victim suffered great bodily harm. *Id.* ¶ 19.

{19} Here, the jury heard evidence that twenty-month-old J.A. was shot in the thigh by Defendant. J.A.'s mother testified that J.A. was hospitalized for approximately twenty-four hours after she was shot and received follow up care for a few months after discharge. Dr. Stephen Lu, the trauma and surgical care physician who treated J.A. for her gunshot wound, testified that J.A. was in pain at the time he treated her, even with pain medication. She was given Ibuprofen when she was discharged from the hospital. Her bullet wound had to be cleaned, and the gauze changed and re-packed, twice a day for about two weeks. Although J.A. could walk and run, she could not do so to the best of her ability, and it took about a month for her to fully heal. J.A. has two scars in her upper thigh where the bullet entered and exited her body. The scar on the front of her leg is about the size of a

12

penny and the scar on the back of her leg is about the size of a dime. Photographs of J.A.'s injury were shown to the jury at trial.

{20}     Dr. Lu testified that while there was no damage to J.A.'s bone or arteries, the femoral artery and vein, the femur, and various nerves run through the thigh. He testified that some of the risk factors of gunshot wounds to children are injury to blood vessels and bleeding to death, a loss of function from nerve injury, and loss of function from bone injury. There is a possibility of death as a result of such injuries. While there was no damage to J.A.'s veins or bone, there was damage to the skin and muscle, which Dr. Lu characterized as damage to an organ. Dr. Lu also testified that there is intermediate term risk of infection, a condition which J.A. fortuitously did not develop. The worst-case scenario if a patient develops severe infection is limb loss or death.

{21}     It is the province of the jury to determine whether J.A.'s impairment was for a sufficiently extended period of time to meet the definition of prolonged impairment. *See Cordova*, 2016-NMCA-019, ¶ 19. Viewing the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, *Cunningham*, 2000-NMSC-009, ¶ 26, we conclude that a reasonable jury could determine that J.A. suffered great bodily harm as defined in the jury instruction.

**II.     Due Process**

**{22}** Defendant also contends that the child abuse convictions violate his due process rights. Specifically, Defendant argues that he "was not on notice that his conduct in defending himself against Trey's attack could be prosecuted as child abuse" because "there was only a 'possibility' that an innocent bystander . . . would be harmed" and, as such, his conduct is outside the scope of the child abuse statute. This is essentially a restatement of Defendant's sufficiency of the evidence challenge. Having determined that a reasonable jury could conclude that Defendant was aware that the children were in the line of fire at the time of the incident, and recklessly disregarded the substantial and unjustifiable risk to the children's safety and health when he fired multiple shots in their direction, we see no due process violation.

### III. Double Jeopardy

**{23}** Double jeopardy claims are generally reviewed de novo. *State v. Baca*, 2015-NMSC-021, ¶ 25, 352 P.3d 1151. But "where factual issues are intertwined with the double jeopardy analysis," appellate courts defer to the district court's findings of fact, unless unsupported by substantial evidence. *Id.* (internal quotation marks and citation omitted).

**{24}** "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *Ramirez*, 2018-NMSC-003, ¶ 38 (internal

14

quotation marks and citation omitted). The Double Jeopardy Clause protection is limited "to prevent[ing] the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended." *Id.* (internal quotation marks and citation omitted).

{25}    There are two types of double jeopardy multiple-punishment cases. *Id.* ¶ 39. One is "the unit of prosecution case, where a defendant challenges multiple convictions under the same statute." *Id.* (internal quotation marks and citation omitted). The other is "the double description case, where the same conduct results in multiple convictions under different statutes." *Id.* (internal quotation marks and citation omitted). Defendant makes both types of double jeopardy multiple-punishment challenges here.

**A.    Unit of Prosecution**

{26}    Defendant first argues that his three convictions for child abuse and his two convictions for shooting from a motor vehicle violate double jeopardy under a unit of prosecution analysis. In a unit of prosecution analysis, "the defendant has been charged with multiple violations of a single statute based on a single course of conduct. The relevant inquiry is whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Id.* ¶ 45 (omission, internal quotation marks, and citation omitted). "[T]he only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is

15

statutorily authorized." *State v. Bernal*, 2006-NMSC-050, ¶ 13, 140 N.M. 644, 146 P.3d 289. "The issue, though essentially constitutional, becomes one of statutory construction." *Herron v. State*, 1991-NMSC-012, ¶ 6, 111 N.M. 357, 805 P.2d 624.

{27} Appellate courts apply a two-step test to determine the Legislature's intent with respect to the unit of prosecution. *Ramirez*, 2018-NMSC-003, ¶ 47. The first step of the analysis is to look to the language of the statute to determine whether the Legislature defined the unit of prosecution. *See State v. Bernard*, 2015-NMCA-089, ¶ 17, 355 P.3d 831. "However, if the language is ambiguous, we proceed to the second step of the analysis in which our task is to determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Id.* (internal quotation marks and citation omitted). "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Bernal*, 2006-NMSC-050, ¶ 14.

**1.     The Multiple Child Abuse Convictions Violate Double Jeopardy**

{28} With respect to the first step, statutory language, we observe again that Section 30-6-1(D)(1) states: "Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]"

16

The Court in *Ramirez* held that this language is ambiguous as to the unit of prosecution. 2018-NMSC-003, ¶ 55. Thus, we move on to the second step of the analysis.

**{29}** Under the second step of the unit of prosecution analysis, we determine whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments under the same statute. *See Bernard*, 2015-NMCA-089, ¶ 17. "Our case law instructs that we consider the temporal proximity of the acts, the location of the victim(s) during each act, the existence of an intervening event, the sequencing of acts, the defendant's intent as evinced by his or her conduct and utterances, and the number of victims." *Ramirez*, 2018-NMSC-003, ¶ 56.

**{30}** In conducting this analysis, the number of victims factor plays a significant role. "Multiple victims will likely give rise to multiple offenses." *Id.* ¶ 57 (alteration, internal quotation marks, and citation omitted). "While the existence of multiple victims does not, itself, settle whether conduct is unitary or distinct, it is a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors." *Bernal*, 2006-NMSC-050, ¶ 18. As this Court explained in *State v. Castañeda*,

> [w]e further emphasize that a single unit of prosecution in a child abuse case involving multiple victims is only appropriate where the children have not actually been harmed. Pursuant to the statute, a person may be guilty of child abuse even if the child is not actually

17

harmed. If actual harm results from child abuse, however, the focus shifts from the actions of the abuser to the result of those actions, and each child harmed is a distinct victim with unique injuries. Under such circumstances, it is entirely appropriate to charge the perpetrator with a separate count of child abuse for each victim.

2001-NMCA-052, ¶ 15, 130 N.M. 679, 30 P.3d 368 (citation omitted).

{31} In *Ramirez*, multiple child victims suffered mental injuries as a result of the defendant's conduct. 2018-NMSC-003, ¶ 57. Notably, the three children involved in *Ramirez* testified that they were in fear and shock as they witnessed the defendant shoot into the vehicle in which they were sitting and kill another passenger. *Id.* Our Supreme Court thus held:

In the circumstances of this case in which each of the three children separately testified to the fear and shock they respectively suffered as a result of [the defendant]'s wanton conduct, we hold that the Legislature intended prosecution for three counts of child abuse by endangerment. [The defendant]'s three convictions for child abuse do not violate double jeopardy.

*Id.* ¶ 58.

{32} In this case, Defendant was convicted for one count of child abuse (recklessly caused, great bodily harm), based on his conduct vis-à-vis J.A., and two counts of child abuse (recklessly caused, no death or great bodily harm), based on his conduct vis-à-vis Ma.G. and Me.G. Defendant argues that each of the child abuse convictions arose from the same course of conduct—shooting from the vehicle in quick succession without any intervening event—and are therefore not

18

based on separate and distinct acts. Defendant thus contends that his multiple child abuse convictions violate double jeopardy.[1]

{33} It need be emphasized that Defendant's conduct—shooting from the motor vehicle in the direction of Trey, the children, and the other bystanders in the parking lot—had a two-fold result: J.A. was actually harmed, and the other two children were put into harm's way. There was, however, no evidence presented at trial that either Ma.G. or Me.G. was actually harmed. Applying the reasoning in *Castañeda* and *Ramirez*, we conclude that Defendant's actions recklessly placed both Ma.G. and Me.G. in a situation that endangered their health or safety, but caused no harm, justifying a single punishment; but as a consequence of those same actions, J.A. suffered a discrete injury, making her a distinct victim and justifying an additional punishment. Consequently, we conclude that Defendant's convictions for two counts of child abuse (recklessly caused, no death or great bodily harm) violate double jeopardy where only one punishment was justified. Defendant's separate conviction for child abuse (recklessly caused, great bodily harm), however, does not violate double jeopardy.

{34} We observe that the district court did in fact merge the two counts of child abuse (recklessly caused, no death or great bodily harm) for sentencing purposes.

---

[1]Defendant conceded below that there should be two separate child abuse convictions, one for child abuse against J.A. and one encompassing the child abuse against both Ma.G. and Me.G. However, on appeal, he is apparently arguing that only one child abuse conviction should survive a unit of prosecution analysis.

On remand, however, one of these convictions must be vacated. *Cf. State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[C]oncurrent sentencing does not adequately remedy the imposition of impermissible multiple punishments for a single offense; double jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated.").

**2.    The Two Shooting From a Motor Vehicle Convictions Do Not Violate Double Jeopardy**

{35}    Defendant was convicted for one count of shooting at or from a motor vehicle (great bodily harm) for his conduct with respect to J.A., and for one count of shooting at or from a motor vehicle (no injury) for his conduct with respect to Me.G. Defendant broadly claims that these convictions violate double jeopardy.

{36}    As an initial matter, we note that the analysis contained in Defendant's brief in chief moves directly to the second step of the unit of prosecution test. That is, Defendant does not look to the language of the shooting from a motor vehicle statute to determine whether the Legislature defined the unit of prosecution, *see Bernard*, 2015-NMCA-089, ¶ 17, nor does he provide us with any argument regarding the appropriate unit of prosecution. Instead, Defendant delves directly into arguing that the conduct at issue constituted "one shooting." We also note that the State's answer brief provided us with no additional clarity with respect to the appropriate unit of prosecution. This Court has no duty to review an argument that

20

is not adequately developed. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim). "To rule on an inadequately briefed issue, [the appellate courts] would have to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. "This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for [the appellate courts] to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.* Therefore, we will not determine whether the statute defines the unit of prosecution for shooting from a motor vehicle.

{37}    Assuming then, without deciding, that the unit of prosecution for shooting from a motor vehicle is ambiguous, we consider next Defendant's contention that there were insufficient indicia of distinctness to justify multiple punishments. Defendant cites *State v. Handa*, 1995-NMCA-042, 120 N.M. 38, 897 P.2d 225, as an analogous case. We note, however, that *Handa* involved an assault on a single victim. *Id.* ¶ 26. The Court specifically held that "an assault arising from a series of three successive shots to a single victim, not separated by a significant amount of time, and arising from a single, continuous intent constitutes one offense[.]" *Id.*

21

Without more, we are not persuaded that the conclusion in *Handa* applies with equal force where there is more than one victim.

{38}     In the absence of a better-developed argument, we see no reason to depart from our reasoning laid out above with respect to multiple victims in the child abuse context. Thus, under the facts of this case, where Defendant's shooting from a motor vehicle resulted in convictions based on two different victims, one of whom was actually harmed by Defendant's actions, we conclude that there are sufficient indicia of distinctness to justify multiple punishments. *Cf. Herron*, 1991-NMSC-012, ¶ 15 ("[M]ultiple victims will likely give rise to multiple offenses[.]"); *State v. Barr*, 1999-NMCA-081, ¶¶ 19-20, 127 N.M. 504, 984 P.2d 185 (determining that distinct and separate acts of contributing to the delinquency of a minor (CDM) were perpetrated by the defendant where there were multiple victims, separate effects, and where the jury was instructed separately with respect to CDM for each victim and the instructions "varied to some degree according to the particular juvenile"). We conclude that Defendant's two convictions for shooting from a motor vehicle do not violate double jeopardy.

**B.     Double Description**

{39}     Defendant also argues that his convictions for child abuse and shooting from a motor vehicle violate double jeopardy under a double description theory. Under a double description theory, "the same conduct results in multiple convictions under

22

different statutes." *Ramirez*, 2018-NMSC-003, ¶ 39 (internal quotation marks and citation omitted). Double description challenges are analyzed under the two-part test established in *Swafford v. State*, 1991-NMSC-043, ¶¶ 25-34, 112 N.M. 3, 810 P.2d 1223. First, we must determine whether the conduct underlying the multiple offenses was unitary. *Ramirez*, 2018-NMSC-003, ¶ 42. If we determine that the conduct at issue is unitary, we proceed to the second part of the analysis and then determine whether, considering the statutes at issue, the Legislature intended to create separately punishable offenses. *Id.*

{40} Turning first to the question of whether Defendant's conduct was unitary, we keep in mind that "the task is merely to determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable." *Swafford*, 1991-NMSC-043, ¶ 28. Here, Defendant fired multiple gunshots toward a group of people in quick succession from a moving vehicle. One of those shots struck J.A. in the thigh, while the other shots created a substantial and unjustifiable risk to the health and safety of Me.G. On these facts, we conclude that the conduct underlying both the child abuse convictions and the shooting from a motor vehicle convictions—as each pertain to J.A. and Me.G.—was unitary.

{41} Next, we must determine whether, considering the statutes at issue, the Legislature intended to create separately punishable offenses. "In the absence of an express statement of legislative intent, we apply the rule of statutory construction

23

from *Blockburger v. United States*, 284 U.S. 299[](1932), to ensure that each provision requires proof of a fact that the other does not." *State v. Fuschini*, 2017-NMCA-084, ¶ 8, 406 P.3d 965 (internal quotation marks and citation omitted), *rev'd on other grounds*, No. S-1-SC-36489, dec. (N.M. Sup. Ct. Dec. 6, 2018). "If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Ramirez*, 2018-NMSC-003, ¶ 43 (internal quotation marks and citation omitted). Comparing the elements of the two statutes at issue in this case, it is clear that each requires proof of a fact that the other does not. *Compare* § 30-6-1(D)(1) (requiring the state to prove that the offender placed a *child* in a situation that endangered the child's life or health), *with* NMSA 1978, § 30-3-8(B) (1993) (requiring the state to prove that the offender willfully discharged a firearm at or from a *motor vehicle*). Under the *Blockburger* strict-elements test, we can infer that the Legislature intended to punish these crimes separately.[2]

---

[2] Defendant does not develop any argument with respect to whether a modified *Blockburger* analysis would lead us to a different result. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024 (stating that where a statute is "multi-purposed and written with many alternatives, or is vague and unspecific[,]" a modified *Blockburger* analysis is used to determine if one crime is subsumed within the other (emphasis, internal quotation marks, and citation omitted)); *State v. Ramirez*, 2016-NMCA-072, ¶ 22, 387 P3d 266 (stating that the modified *Blockburger* test is used "to determine whether the state's theory for one crime, as charged to the jury, is logically subsumed . . . within the state's theory for a separate crime"). Instead, the analysis in Defendant's brief in chief begins with *Blockburger* and then concludes with an effort at establishing that his

24

{42} "We therefore must proceed to the most challenging step of the double jeopardy analysis, trying to determine whether the Legislature intended to impose cumulative punishment for unitary conduct violating two statutes that survive the *Blockburger* elements test." *State v. Montoya*, 2013-NMSC-020, ¶ 32, 306 P.3d 426. We do so by turning "to traditional means of determining legislative intent: the language, history, and subject of the statutes and we must identify the particular evil sought to be addressed by each offense." *Id.* (internal quotation marks and citation omitted). "If several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution." *Id.* (internal quotation marks and citation omitted).

{43} In looking at the statutes at issue in the present case, we observe first that the offenses of child abuse and shooting from a motor vehicle are not typically violated together. The statutes also address distinct social evils. Section 30-6-1 is "designed to give greater protection to children than adults because children are more vulnerable than adults[.]" *Santillanes*, 2001-NMSC-018, ¶ 24 (internal quotation marks and citation omitted). "When an adult, without justification,

---

conduct was unitary. His reply brief continues to conflate the modified *Blockburger* analysis with the question of whether his conduct was unitary. In the absence of adequate briefing, we will not engage in further analysis on this point, and we will assume for purposes of this appeal that the charged offenses at issue survive a modified *Blockburger* analysis.

25

endangers a child's safety, the adult is more culpable than when the safety of another adult is jeopardized." *Id.* (internal quotation marks and citation omitted). "[T]he history of the child abuse statute compels the conclusion that the Legislature has expanded protection for children." *Id.* (alteration, internal quotation marks, and citation omitted). In contrast, Section 30-3-8(B) "is one of a group of statutes that proscribe assault and battery." *State v. Marquez*, 2016-NMSC-025, ¶ 23, 376 P.3d 815. Based on these indicia of legislative intent, it does not appear that child abuse by endangerment and shooting from a motor vehicle are intended only to be "alternative means of prosecution." *See Montoya*, 2013-NMSC-020, ¶ 32.

{44} Defendant does not make an argument with respect to these particular indicia of legislative intent. Rather, Defendant relies on *Santillanes*, 2001-NMSC-018, to support his position that separate punishments for child abuse and shooting from a motor vehicle are precluded by double jeopardy. However, the holding in *Santillanes* that double jeopardy precluded multiple punishments for vehicular homicide and child abuse resulting in death depended in large part on "the generally accepted notion that one death should result in only one homicide conviction." 2001-NMSC-018 ¶ 5 (internal quotation marks and citation omitted); *see Montoya*, 2013-NMSC-020, ¶ 43 (stating that in *Santillanes* this Court specifically affirmed the reasoning of the Court of Appeals "that one death should

result in only one homicide conviction" (internal quotation marks and citation omitted)). Thus, we are not persuaded that its reasoning applies equally here.

**{45}** Similarly, Defendant points us to *State v. Swick*, 2012-NMSC-018, ¶¶ 11-31, 279 P.3d 747, which determined that separate convictions for attempted murder and aggravated battery arising from the same conduct violate the prohibition against double jeopardy. We note, however, that the Court in *Swick* first determined that under a modified *Blockburger* analysis, the elements of attempted murder subsumed the elements of aggravated battery. *Id.* ¶¶ 27, 29. The Court went on to state, in the alternative, that even if the statutes at issue survived a modified *Blockburger* analysis, both statutes "address the social evil of harmful attacks on a person's physical safety and integrity." *Id.* ¶ 29. The statutes merely "take different degrees into consideration." *Id.* Here, as noted above, Defendant has not provided us with a developed argument regarding precisely how, if at all, a modified *Blockburger* analysis applies in this case, nor are we dealing with two statutes that address the same social evil. Thus, we are not persuaded that *Swick* appropriately informs our decision.

**{46}** And lastly, although Defendant invokes the "substantive sameness" language from *Montoya*, 2013-NMSC-020, ¶ 46, his simple string cite to three unpublished cases, each dealing with the offense of shooting *at* a motor vehicle, does not convince us that the particular crimes at issue in our case—child abuse

27

and shooting from a motor vehicle—are substantively the same offense for double jeopardy purposes. *Cf. id.* ¶ 52 (stating that our Supreme Court could no longer conclude that the Legislature intended multiple punishments for voluntary manslaughter and shooting *at* a motor vehicle resulting in great bodily harm, taking into consideration "the relationship between the statutory offenses and their common commission by unitary conduct, the identical social harms to which they are directed, and their use by the [s]tate . . . to impose double punishment for the killing of a single victim").

**{47}** Consequently, in light of the *Blockburger* inference that the Legislature intended to punish the crimes of child abuse and shooting from a motor vehicle separately, and taking into account the other indicia of legislative intent, we conclude that multiple punishments for these offenses do not constitute double jeopardy.

**{48}** We note that the district court merged the child abuse (recklessly caused, great bodily harm) and the shooting from a motor vehicle (great bodily harm) convictions for sentencing. Because we have concluded that there is no double jeopardy violation, we can see no error in the merger for sentencing. However, the State argues in its answer brief that such a merger constitutes a sentencing error. While an appellee is free to assert any reason supporting affirmance, without having first preserved the issue below, *see State v. Todisco*, 2000-NMCA-064, ¶

28

11, 129 N.M. 310, 6 P.3d 1032 ("Generally, an appellee has no duty to preserve issues for review and may advance any ground for affirmance on appeal."), an appellee—absent a cross-appeal—may only raise new points of error for our determination in the event that we reverse the judgment, in whole or in part. *See* Rule 12-201(C) NMRA ("An appellee may, without taking a cross-appeal . . . raise issues on appeal for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from."). Because we are reversing a portion of the judgment and sentence, we can consider the State's issue, even in the absence of a cross-appeal. However, we are not convinced by the State's underdeveloped and unsupported argument that sentencing error occurred in this case. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]").

**IV.    Inconsistent Verdicts**

{49}    Because the jury convicted Defendant for some, but not all, of the shooting related charges, Defendant argues that the verdicts are inconsistent. Specifically, relying on the fact that the jury was instructed on self-defense for all of the

shooting related counts, Defendant argues that "[b]ecause the jury found that [he] was justified in shooting back at Trey in order to defend himself, his girlfriend, and her sister, the jury could not possibly and consistently have found that he was guilty of child abuse and some counts of shooting from a motor vehicle[.]"

{50} "Inconsistent verdicts are those which are so contrary to each other that the basis upon which each verdict was reached cannot be determined." *State v. Fernandez*, 1994-NMCA-056, ¶ 38, 117 N.M. 673, 875 P.2d 1104. However, it is well settled that we do not entertain challenges to allegedly inconsistent verdicts. *See, e.g.*, *State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d 133 ("We have frequently said that our business is to review the verdicts of conviction, and not concern ourselves with any alleged acquittals, and thus we do not entertain contentions alleging that the verdicts are irreconcilable."); *Fernandez*, 1994-NMCA-056, ¶ 39 ("[W]e review the verdict of conviction, not the verdict of acquittal.").

{51} Defendant relies on *Hundley v. District of Columbia*, 494 F.3d. 1097 (D.C. Cir. 2007) to support his inconsistent verdict argument. *Hundley* is a federal civil rights case that specifically dealt with an "assault and battery and excessive force verdict [that] was inconsistent with the written interrogatory answer[.]" *Id.* at 1103-04. In the absence of a better developed argument, we are not persuaded that this out-of-jurisdiction case is apposite to the issue in our case. Therefore, we will

apply the standard as laid out in *Roper*; that is, "we do not entertain contentions alleging that the verdicts are irreconcilable." 2001-NMCA-093, ¶ 24.

**{52}** Inasmuch as there is sufficient evidence to support the child abuse convictions, as addressed above, and because there is otherwise no challenge to the sufficiency of the evidence to support any of the other convictions, we will not address this issue further.

**V.     Excusal of a Prospective Juror for Cause**

**{53}** Defendant argues that the district court erroneously struck a prospective juror for cause based on his religious beliefs and that such excusal constituted a deprivation of Defendant's constitutional rights. We review the district court's rulings on juror challenges for cause under an abuse of discretion standard. *State v. Gardner*, 2003-NMCA-107, ¶ 16, 134 N.M. 294, 76 P.3d 47. The district court "is in the best position to assess a juror's state of mind, by taking into consideration the juror's demeanor and credibility. It is within the district court's discretion as to whether a prospective juror should be excused." *State v. Clark*, 1999-NMSC-035, ¶ 10, 128 N.M. 119, 990 P.2d 793. "We will not disturb the [district] court's decision absent a clear abuse of discretion or a manifest error." *State v. Sutphin*, 1988-NMSC-031, ¶ 16, 107 N.M. 126, 753 P.2d 1314.

**{54}** "The [district] court properly excludes a juror for cause where the juror's views would prevent or substantially impair the performance of his duties as a

31

juror in accordance with his instructions and his oath." *Gardner*, 2003-NMCA-107, ¶ 16 (internal quotation marks and citation omitted). Here, the district court struck a prospective juror for cause who stated: "My spiritual beliefs make it so that I will not pass judgment on another man[.]" The prospective juror also stated that if he were chosen as a juror, he would "not be able to engage in making a decision[.]"

{55} The prospective juror's own statements clearly demonstrate that his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. As such, there was not a clear abuse of discretion or a manifest error in this case and we will not disturb the district court's decision to excuse the prospective juror. *See Clark*, 1999-NMSC-035, ¶ 12 (holding that there was no abuse of discretion where jurors were excused, not because they were members of a particular religion, but rather because they were unable to apply the law).

## VI. Ineffective Assistance of Counsel

{56} Finally, Defendant contends that his attorney was ineffective by mistakenly advising him that the alternative to count one was a third-degree felony when it was actually a first-degree felony if it resulted in great bodily harm. As a consequence, Defendant asserts on appeal that he would have considered "the

32

State's plea offer in a different light had he been properly informed about the sentence that he was facing if convicted of reckless child abuse."

{57} Appellate courts have a preference that ineffective assistance of counsel claims be brought and resolved through habeas corpus proceedings. *Bernal*, 2006-NMSC-050, ¶ 33. "[O]n direct appeal, only when a defendant presents a prima facie case of ineffective assistance of counsel will [the appellate courts] remand to the trial court for evidentiary proceedings." *Id.* "A prima facie case of ineffective assistance of counsel requires that a defendant establish that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Cordova*, 2014-NMCA-081, ¶ 9, 331 P.3d 980 (internal quotation marks and citation omitted).

{58} To prevail on an ineffective assistance of counsel claim based upon the rejection of a plea offer, a defendant must show

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* ¶ 12 (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). "Although the standard to be applied in this context is different, it is nevertheless an ineffective

33

assistance of counsel claim" and the preference that these claims be adjudicated in habeas proceedings still applies. *Id.* ¶ 13. Resolution of this type of claim requires the same adequate record. *Id.* "Accordingly, we will remand to the district court for an evidentiary hearing only if the defendant has presented a prima facie case of ineffective assistance of counsel." *Id.*

{59} In this case, there was no evidence presented below to support Defendant's ineffective assistance of counsel claim. There is only argument of counsel, Defendant's motion for new trial, and testimony from Defendant's uncle at sentencing that Defendant chose to go trial believing he would be able to avoid the 18-year sentence. Notably, Defendant does not argue, and the record does not otherwise establish, that Defendant would have accepted the plea offer had he been advised that the alternative to count one was a first-degree felony. Instead, he asserts on appeal simply that he "would have considered the State's plea offer in a different light had he been properly informed about the sentence that he was facing if convicted of reckless child abuse." This is not sufficient under *Cordova*, as laid out above, to establish a prima facie case of ineffective assistance of counsel. *Cf. State v. Morgan*, 2016-NMCA-089, ¶ 25, 382 P.3d 981 ("The mere existence of a plea offer . . . has no bearing on whether [the d]efendant would have accepted it[.]").

**{60}** Thus, Defendant has failed to establish a prima facie case of ineffective assistance of counsel. He may, however, raise this issue, if he is so inclined, through a habeas corpus proceeding.

**CONCLUSION**

**{61}** For these reasons, we conclude that Defendant's convictions for two counts of child abuse (recklessly caused, no death or great bodily harm) violate double jeopardy and we remand to the district court to vacate one of the two convictions. We otherwise affirm.

**{62}** **IT IS SO ORDERED**.

_____

**DANIEL J. GALLEGOS, Judge Pro Tempore**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**EMIL J. KIEHNE, Judge Pro Tempore**

35